UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON HENRY ALLEN, | Case No. 2:25-cv-00404-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES LLC, TRANS UNION LLC; FORD MOTOR CREDIT COMPANY LLC; M2 LAW GROUP P.C.; HOWELL & VAIL LLP; MICHAEL J. ARCHIBALD; and LISSETTE M. CARRERAS, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Jason Henry Allen, proceeding pro se, filed suit against various defendants, including Ford Motor Credit Company LLC, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Ford filed an answer asserting affirmative defenses and counterclaims for breach of contract, fraud in the inducement, and foreclosure of its security interest in a 2020 Ford Explorer. Allen moves to dismiss Ford's counterclaims, strike Ford's affirmative defenses, and stay

or bifurcate Ford's contract and foreclosure counterclaims. [1] *See* Dkt. 44. For the reasons below, the Court denies the motion.

## BACKGROUND

In July 2020, Allen purchased a 2020 Ford Explorer for $64,656. He financed the purchase through Ford Motor Credit Company under a retail installment sale contract requiring 72 monthly payments of $898, granting Ford a security interest in the vehicle, and allowing for repossession of the vehicle upon default. *Counterclaim*, ¶¶ 5-6, Dkt. 56.

In July and August 2024, Allen presented two paper instruments labeled "Certified Funds" totaling approximately $44,000 to pay off the loan balance. Ford rejected both instruments as non-negotiable because they were not linked to a valid existing account. The instruments bore U.S. Treasury routing numbers and contained language purporting to discharge the debt under the Uniform Commercial Code. *Id.* ¶¶ 7-8.

Beginning in October 2024, Allen scheduled eight electronic payments through Ford's Payment Authorization Agreement system, totaling over $180,000. Upon receipt of Allen's first electronic payment of $20,897.00, Ford sent Allen a letter dated October 3, 2024, stating that his loan had been "paid-in-full." The eight

---

[1] On December 17, 2025, Allen filed a Second Amended Complaint, after moving to dismiss Ford's counterclaims. On January 2, 2026, Ford filed an answer to the amended complaint and re-filed its counterclaims. The newly filed counterclaims are identical to the previously filed counterclaims that Allen has moved to dismiss. The re-filing of the counterclaims therefore does not moot Allen's motion. The Court, however, will cite to the most recent counterclaim.

payments continued to post as scheduled. When the payment scheduled for
October 18 posted, Ford released the lien and issued the vehicle's title to Allen.
After sending the letter and issuing Allen title to the vehicle, Ford discovered Allen
had used his social security number as the "account number" for the electronic
payments, and Ford was unable to locate an account. All eight scheduled payments
were returned as nonnegotiable as Ford was unable to locate Allen's account. *Id.* ¶¶
9-12.

On October 22, 2024, Ford informed Allen that his October 18 electronic
payment was returned. It also informed Allen that his obligation to make monthly
payments or pay the balance in full remained in effect. On December 2, Ford sent
Allen another letter informing him that his $22,000 payment had not been honored
and requesting Allen return title to the vehicle. It also reiterated that all terms of his
contract, including his payment obligations, remained "in full force and effect,"
and that Ford retained a security interest in the Explorer. Ford never received any
funds from the eight scheduled electronic payments. *Id.* ¶¶ 13-15.

In response to Allen's amended complaint, Ford filed an answer asserting
twelve affirmative defenses and three counterclaims for breach of contract, fraud in
the inducement, and foreclosure of its security interest in the 2020 Ford Explorer.
Allen now moves to dismiss all three counterclaims under Federal Rules of Civil
Procedure 12(b)(6) and 9(b), to strike nine affirmative defenses, and to bifurcate

the counterclaims from his FCRA claims.

## ANALYSIS

### A. Motion to Dismiss

#### 1. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept legal conclusions as true. *Id.* Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

### 2. Fraud in the Inducement

Allen argues Ford's fraud counterclaim should be dismissed because it fails to plead fraud with particularity, is barred by Idaho's economic loss rule, and fails to adequately plead justifiable reliance.

### a. Rule 9(b)'s Particularity Requirement

In Idaho, a claim for fraud consists of nine elements: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. Budget Truck Sales, LLC v. Tilley, 419 P.3d 1139, 1145 (Idaho 2018). Under Rule 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the misconduct and why the statement was false. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019).

Ford has adequately pled the "who, what, when, where, and how" of the alleged fraud. Ford identifies Allen as the speaker and Ford as the recipient of the alleged misrepresentations. Ford specifies the dates of the alleged misrepresentations with precision: July 15, 2024, and August 1, 2024 for the paper

instruments, and October 3, 10, 18, 24, 31 and November 7, 14, and 21, 2024 for the electronic payments. Ford identifies the specific content of the representations—that the instruments and electronic payments were "valid, negotiable, and sufficient to satisfy the debt." Ford alleges these representations were false because the instruments were not drawn from valid, existing accounts. Ford also alleges Allen knew or should have known the payments were non-negotiable and would not satisfy the debt. The Court therefore finds Ford has satisfied Rule 9(b)'s particularity requirement.

### b. The Economic Loss Rule

Allen argues that Ford's fraud claim is barred by Idaho's economic loss rule. The economic loss rule is a judicially created doctrine that bars recovery of purely economic losses in negligence actions. *Taylor v. Taylor*, 422 P.3d 1116, 1125 (Idaho 2018). Ford does not allege negligence; it alleges fraud. As the Idaho Supreme Court explained, "a claim for fraud will nearly always involve claims for economic loss, and if the economic loss rule operated to bar fraud claims, it would vitiate fraud causes of action." *Id.* The rule therefore does not apply to Ford's fraud claim.

Allen, however, insists that the economic loss rule bars fraud-in-the-inducement claims that are "extraneous to and not interwoven with the contract," citing several cases that purportedly support this distinction. *Reply*, Dkt. 48 at 5.

**MEMORANDUM DECISION AND ORDER - 6**

But Allen misrepresents the holdings of these cases. None of them even discuss the application of the economic loss rule to fraud claims. Most troubling, Allen relies on quoted language from *Truckstop.net, LLC v. Sprint Communications Co.*, 537 F. Supp. 2d 1126 (D. Idaho 2008) and *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996 (Idaho 2005) that appears entirely fabricated. Pro se litigants, while entitled to liberal construction of their pleadings, are not entitled to rely on fabricated quotations or misrepresented authority.[2] Idaho law is clear: the economic loss rule applies to negligence cases, not intentional torts like fraud. *Taylor*, 422 P.3d at 1125.

### c. Justifiable Reliance

Allen argues that Ford's fraud claim fails because Ford, as a sophisticated financial institution with automated payment verification systems, cannot claim it justifiably relied on Allen's representations when Ford's own systems ultimately flagged the payments as invalid.

Justifiable reliance is an essential element of fraud. *Lindberg v. Roseth*, 46 P.3d 518, 522 (Idaho 2002). When a party conducts an independent investigation of records, the party is not entitled to rely on alleged misrepresentations if the

---

[2] The Court is gravely concerned by this apparent fabrication of quotes and misrepresentation of the holdings of cited cases.   Mr. Allen is cautioned that if such conduct occurs in the future, the Court will consider issuing an order under Fed.R.Civ.P. 11(c)(3) requiring him to show cause why sanctions should not be imposed for such conduct. He is further cautioned that mistaken reliance upon artificial intelligence for legal research, is not a defense to Rule 11 sanctions.

MEMORANDUM DECISION AND ORDER - 7

investigation discloses the inaccuracy. *Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980). However, the investigation must actually foreclose reliance upon the misrepresentation—the investigation must be of records that would disclose the inaccuracy. *Watson v. Weick*, 141 Idaho 500, 112 P.3d 788, 795 (2005). It is not a defense that the defrauded party could have ascertained the truth through a more thorough investigation. *Faw*, 613 P.2d at 1340. The issue is whether the party relied upon its own investigation of records that accurately disclosed the relevant fact, rather than upon the alleged misrepresentation. *Watson*, 112 P.3d at 795.

Ford has adequately pled justifiable reliance. Ford alleges Allen tendered instruments labeled "Certified Funds" and initiated electronic payments, representing them as "valid, negotiable, and sufficient to satisfy the debt." Ford alleges it relied on these representations, issued a paid-in-full letter, released its lien, and issued title to Allen. When a debtor tenders payment in a form that facially appears valid, a creditor is entitled to process that payment in the ordinary course. That Ford's verification systems subsequently detected the invalidity does not establish that Ford relied on its own investigation rather than Allen's representations—Ford alleges it acted in reliance on Allen's representations before the invalidity was discovered. Taking Ford's allegations as true and drawing all reasonable inferences in Ford's favor, Ford has adequately pled justifiable reliance.

### 3. Breach of Contract

The elements of breach of contract under Idaho law are: (a) existence of the contract, (b) breach of the contract, (c) breach caused damages, and (d) the amount of damages. *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013).

Ford has adequately pled each element. Ford alleges a contract existed between Ford and Allen and attaches a copy of the contract as an exhibit to the counterclaim. Ford alleges Allen breached the contract by failing to remit the required monthly payments and has defaulted, constituting a material breach. Ford alleges the breach has caused damages in the amount of $18,906.80 as of September 22, 2025.

Allen's argument that Ford's own paid-in-full letter and lien release contradict the breach claim conflates factual disputes with pleading sufficiency. Ford alleges these actions resulted from Allen's fraudulent conduct and that no valid payment was ever received. Taking these allegations as true, as the Court must at this stage, Ford has stated a plausible claim for breach of contract. The motion to dismiss the breach of contract counterclaim is denied.

### d. Foreclosure on a Security

Idaho Code § 28-9-609 provides that after default, a secured party may take possession of and dispose of collateral, and may pursue this action through judicial

process. Ford alleges it has a valid security interest in the 2020 Ford Explorer

pursuant to the contract, that Allen has defaulted on his payment obligations, and

that Ford is entitled to foreclose its security interest.

Allen argues Ford's release of the lien extinguished its security interest.

Ford, however, alleges that the lien release resulted from Allen's fraudulent

conduct and that Ford subsequently rescinded the release by letter dated December

2, 2024, informing Allen that Ford retained its security interest. Whether Ford

effectively rescinded the lien release and whether Ford currently holds a valid

security interest are factual questions inappropriate for resolution on a motion to

dismiss. The motion to dismiss this claim is therefore denied.

## B. Motion to Strike Affirmative Defenses

Allen moves to strike Ford's affirmative defenses three through twelve.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a

pleading an insufficient defense." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f)

motion to strike is to avoid the expenditure of time and money that must arise from

litigating spurious issues by dispensing with those issues prior to trial." *Sidney-*

*Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). A defense may be

insufficient as a matter of law or as a matter of pleading. *Precise Innovations, LLC*

*v. Aerospace Eng'g & Support, Inc.*, No. 4:21-CV-00420-BLW, 2022 WL 834632,

at *4 (D. Idaho Mar. 21, 2022). For example, the Court may strike a defense that is

not "applicable as a matter of law." *Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844, 849 (9th Cir. 2024). In addition, the Court may strike a defense that does not satisfy the pleading requirements of Rule 8. S*ee Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (discussing pleading standards in the context of a motion to amend).

Ford's defenses three through ten are more properly characterized as "negative defenses" that dispute elements of Allen's FCRA claims rather than assert new affirmative matter. An affirmative defense precludes liability even if all elements of plaintiff's claim are proven; a negative defense disputes elements of the claim. *Precise Innovations*, 2022 WL 834632, at *3. Striking negative defenses serves no practical purpose because doing so will not eliminate issues from the case or preclude Ford from arguing them. *Johnson*, 2024 WL 369158, at *3.

Ford's defenses eleven (waiver/estoppel) and twelve (fraud) are somewhat conclusory but provide sufficient notice when read with the factual allegations in Ford's Answer and Counterclaim. Allen has not demonstrated prejudice. Granting a "hyper-technical and inconsequential motion to strike runs counter to the purpose of Rule 8" and "diverts resources from substantive litigation." *Id.* The motion to strike is denied.

## C. Motion to Stay or Bifurcate Counterclaims

Allen requests the Court stay or bifurcate Ford's counterclaims pending

resolution of his FCRA claims. Rule 42(b) permits separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Courts possess inherent authority to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Bifurcation or a stay is not warranted. Allen's FCRA claims concern whether defendants accurately reported his credit information. Ford's counterclaims concern whether Allen breached his payment obligations and whether Ford may foreclose on its security interest. Ford's counterclaims are compulsory under Rule 13(a) because they arise from the same transaction—Allen's auto loan. Staying compulsory counterclaims would not promote efficiency.

## D. Ford's FCRA Attorney Fee Request

Allen asks the Court to strike or deny Ford's request for attorney fees under 15 U.S.C. §§ 1681n(c) and 1681o(b), arguing that Ford has not established the statutory predicate of bad faith or harassment. Ford responds that it is entitled to plead a fee request in its Answer and that Allen's motion is premature. The Court agrees with Ford. Sections 1681n(c) and 1681o(b) permit a prevailing defendant to recover attorney fees upon a finding that the plaintiff's action was brought in bad faith or for purposes of harassment. Ford is not required to establish these elements at the pleading stage; such a determination is appropriately made following

resolution of the underlying claims. Ford's fee request is denied.

**ORDER**

**IT IS ORDERED that:**

1. Plaintiff's Motion to Dismiss, to Strike Affirmative Defenses, and to Stay

   Ford's Counterclaims (Dkt. 44) is **DENIED.**

DATED: January 4, 2026

B. Lynn Winmill
U.S. District Court Judge