# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

JASON HENRY ALLEN,

     Plaintiff, Pro Se,

  v.

EXPERIAN INFORMATION SOLUTIONS, INC.;

EQUIFAX INFORMATION SERVICES LLC;

TRANS UNION LLC; and

FORD MOTOR CREDIT COMPANY LLC,

     Defendants.

**Case No. 2:25-cv-00404-BLW**

# EXHIBIT 1

## [Proposed] Third Amended Complaint for Damages;
## Demand for Jury Trial

*Clean copy of the proposed amended pleading, submitted pursuant to Dist. Idaho Loc. Civ. R. 15.1(a)(1).*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF

# IDAHO

| | |
|---|---|
| JASON HENRY ALLEN<br><br>Plaintiff, Pro Se<br>v.<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br><br>EQUIFAX INFORMATION SERVICES LLC;<br><br>TRANS UNION LLC;<br><br>FORD MOTOR CREDIT COMPANY LLC;<br><br>Defendants | Case No.: 2:25-CV-00404-BLW<br><br>**[PROPOSED] THIRD AMENDED<br>COMPLAINT FOR DAMAGES<br>DEMAND FOR JURY TRIAL** |

## [PROPOSED] THIRD AMENDED COMPLAINT FOR DAMAGES

Plaintiff Jason Henry Allen ("Plaintiff"), appearing pro se, alleges as follows:

# I. NATURE OF THE ACTION

1. This is an action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. It arises from the consumer reporting agencies' publication of credit information that is internally inconsistent and facially unreliable on the face of their own reports, and their certification of that inaccurate information as "accurate" after Plaintiff

disputed it; and from furnisher Ford Motor Credit Company LLC's failure to conduct a reasonable investigation after notice of dispute.

2. This pleading directly addresses the deficiency the Court identified in its prior orders (Dkt. 50 and Dkt. 78): the absence of an allegation "establishing which figure is false." Plaintiff no longer relies on inconsistency among the bureaus. He identifies inaccuracies established within a single bureau's own report, as of a single reporting date — including an account that one bureau reports as simultaneously charged off and current, and figures within a single report that are internally inconsistent with one another. In each such instance, because the inconsistent entries cannot simultaneously be true, the report necessarily contains inaccurate information within the meaning of the FCRA, and at least one of the inconsistent entries is therefore inaccurate.

# II. JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4. Venue is proper under 28 U.S.C. § 1391(b): Plaintiff resides in this District (Kootenai County, Idaho), Defendants regularly transact business here, and the events giving rise to the claims occurred here.

# III. PARTIES

5. Plaintiff Jason Henry Allen is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1681a(c), residing in Post Falls, Idaho.

6.	Defendants Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union LLC (the "CRA Defendants") are each a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

7.	Defendant Ford Motor Credit Company LLC ("Ford") is a "furnisher" of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2.

# IV. FACTUAL ALLEGATIONS

## A. The ICCU Tradeline and the Facial Inconsistencies on Each Bureau's Own Report

8.	Defendants reported a single Idaho Central Credit Union ("ICCU") installment auto-loan tradeline, account ending #74538 (the "ICCU tradeline"), on Plaintiff's three-bureau consumer reports dated July 16, 2025 (Reference No. M65173494) and August 24, 2025 (Reference No. M66302311), attached as Exhibits A-2 and A respectively. The tradeline reported the same data on both reports. Equifax masks this same single account on its own records and reinvestigation correspondence as account ending *4317 (Exhibit B-6).

9.	As reported on Exhibits A-2 and A (the data being identical on both), the ICCU tradeline contained the following data, by bureau: Balance — TransUnion $84,801, Experian $84,801, Equifax $84,801; High Credit — TransUnion $84,701, Experian $84,701, Equifax $84,801; Past Due — TransUnion $65,000, Experian $84,801, Equifax $84,801; Payment Status — all three "Collection/Chargeoff"; Scheduled Monthly

Payment — all three $0.00; most-recent payment-grid entry — TransUnion blank, Experian "CO" (charge-off), Equifax "OK" (current).

10. Each inaccuracy alleged below is established on the face of a single bureau's own report and does not depend on any comparison between bureaus.

11. (a) Equifax simultaneously represents the same account as both charged off and current — an internal contradiction on the face of its own report. Equifax reported the account as "Collection/Chargeoff," with the entire $84,801 balance past due and no payment since December 1, 2024, while its own payment-history grid simultaneously displays a status of "OK" (current) for the most recent reporting month. An account that Equifax itself reports as charged off and seriously delinquent cannot accurately be reported as current ("OK") for that same reporting period; the two entries cannot both be true, and at least one is therefore necessarily inaccurate on the face of the report. Because these entries purport to describe the same account as of the same reporting date yet assert mutually exclusive conditions, the report did not merely contain an internal formatting discrepancy; it communicated false information about Plaintiff's account status to the users who received it. A consumer report that simultaneously represents mutually exclusive account conditions presents unreliable information to users of the report, regardless of which individual field ultimately proves incorrect. Plaintiff does not allege that the account should not be reported as charged off; he alleges only that Equifax's report contradicts itself on its face and is therefore inaccurate as to at least one of those entries. More specifically, Plaintiff identifies the "OK" (current) notation as the inaccurate entry: Equifax's own report shows the account was charged off, with the entire $84,801 balance past due and no payment received since December 1, 2024, and

Equifax's own payment-history grid records a progression of 30-, 60-, 90-, and 120-day delinquencies on the same account; a "current" notation for an account that Equifax itself reports as seriously delinquent and then charged off is affirmatively incorrect, not a mere formatting artifact.

12.     (b) On a single reporting date, TransUnion reported the account as "Collection/Chargeoff," with a current Balance of $84,801, yet reported a Past Due amount of only $65,000 — $19,801 less than the full balance it simultaneously reported as charged off and with no scheduled monthly payment. The reported Balance and Past Due figures are internally inconsistent in the context of the account as reported — a fully charged-off installment account with no payment due and the entire balance owed — rendering the tradeline facially inconsistent. The figures described in this paragraph appeared identically on both the July 16 and August 24, 2025 reports (Exhibits A-2 and A), establishing that the inconsistencies were persistent, not transient artifacts, and incapable of explanation by any difference in reporting dates.

13.     Plaintiff does not, in this pleading, litigate whether the underlying debt is owed; he challenges only the accuracy of the specific data fields identified above. Plaintiff does not rely on inconsistencies among the bureaus; each inaccuracy above is established on the face of a single bureau's own report.

## B. Plaintiff's Disputes and the CRA Defendants' Reinvestigation Failures

14.     Plaintiff disputed the accuracy of the ICCU tradeline with the CRA Defendants on more than one occasion through their standard dispute channels. Plaintiff's disputes

challenged the accuracy of the tradeline's reported payment status and balance information; Plaintiff did not dispute that the account was his. With Experian, Plaintiff's disputes were resolved on or about January 28, 2025 (Exhibit B-1) and June 11, 2025 (Exhibit B-2). With Equifax, Plaintiff's dispute of the same tradeline was resolved on or about July 15, 2025 (Exhibit B-6). Plaintiff also disputed the ICCU tradeline with Trans Union through its dispute channel; the records of that dispute are within Trans Union's possession and are expected to be produced in discovery. The same facial inconsistencies described above were present on the tradeline throughout this period and remained in place after each dispute.

15. In response to each dispute, the CRA Defendants reported that the furnisher had "certified" the information as accurate and that the tradeline would "remain" or was "reported correctly" (Exhibits B-1, B-2, and B-6) — leaving in place, on each occasion, the internal charge-off/current contradiction and the related-figure inconsistencies described above. No reasonable reinvestigation could repeatedly certify as accurate an account simultaneously reported as charged off and current, or a tradeline whose own related figures are internally inconsistent.

16. Each CRA Defendant transmitted notice of Plaintiff's disputes to the furnisher(s) through the Automated Consumer Dispute Verification ("ACDV") / e-OSCAR system, as contemplated by 15 U.S.C. § 1681i(a)(2).

## C. Third-Party Publication and Concrete Injury — the Denial of a $960,000 Mortgage

17.     On or about October 3, 2025, a mortgage lender obtained Plaintiff's consumer reports and credit scores from all three CRA Defendants (through reseller Advantage Credit, Inc.) in connection with Plaintiff's application for a $960,000 residential mortgage loan (Loan No. 2510176425).

18.     The same internally inconsistent figures appeared on Plaintiff's reports in two consecutive months — July 16 and August 24, 2025 (Exhibits A-2 and A) — and no dispute resulted in their correction. Based on that identical and uncorrected reporting across consecutive months, those same figures — including Equifax's reporting of the Ford account's High Credit as $18,906 — remained on the consumer reports the mortgage lender obtained approximately six weeks later, on or about October 3, 2025, the ICCU tradeline being Plaintiff's principal derogatory installment account on each report.

19.     On October 16, 2025, the lender issued a written Statement of Credit Denial (Exhibit D) denying the application. The denial stated the decision was "based in whole or part on information obtained in a report from the consumer-reporting agency," and identified, among the "key factors that adversely affected" Plaintiff's credit scores: "SERIOUS DELINQUENCY," "AMOUNT PAST DUE ON ACCOUNTS," and "AMOUNT OWED ON DELINQUENT ACCOUNTS." The scores the lender obtained and relied upon were Experian 657, TransUnion 643, and Equifax 631.

20.     The CRA Defendants' publication of Plaintiff's reports to the mortgage lender was a publication to a third party. The balance, past-due, and payment-status fields on the ICCU tradeline — the very fields reported inconsistently — are among the categories of information considered by credit-scoring models and mortgage underwriting systems.

Plaintiff alleges that the internally inconsistent reporting of those fields suppressed his credit scores below the levels that accurate, internally consistent reporting of the same account would have produced, and that the lender relied on those scores and on the tradeline's derogatory data in denying the application. The injury Plaintiff alleges arises from the publication of the internally inconsistent tradeline itself, separate from the bare fact that the account was charged off: the lender received and relied upon a tradeline whose own reported figures contradict one another in the very categories — serious delinquency, amount past due, and amount owed on delinquent accounts — that it cited in denying the loan (Exhibit D).

21.     As a direct and proximate result, Plaintiff was denied a $960,000 mortgage; suffered suppression of his credit scores and exposure to materially worse credit terms; and incurred emotional distress, reputational harm, and out-of-pocket costs.

# V. COUNT I — 15 U.S.C. § 1681e(b) (Against the CRA Defendants)

22.     Plaintiff incorporates the preceding paragraphs.

23.     Section 1681e(b) requires a consumer reporting agency, whenever it prepares a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

24.     The CRA Defendants reported information that was inaccurate on its face — most directly, an account that Equifax simultaneously represents as both charged off and current (Equifax); a Past Due amount materially less than the charged-off Balance on the

same report (TransUnion) — each of which is internally inconsistent within a single bureau's own report. A reasonable procedure to assure maximum possible accuracy should detect data that is mutually exclusive on the face of a single tradeline — for example, an account reported as both charged off and current. Whether the CRA Defendants' procedures were reasonable is ordinarily a question for the jury. See Gross v. CitiMortgage, Inc., 33 F.4th 1246 (9th Cir. 2022); Gorman, 584 F.3d at 1157.

25.     This inaccurate information was published to a third party — the mortgage lender — on or about October 3, 2025, and resulted from the CRA Defendants' failure to follow reasonable procedures to assure maximum possible accuracy. The pleaded causal chain plausibly connects the inaccurate reporting to the adverse decision: a report that is internally inconsistent on its face has not been prepared with maximum possible accuracy; the unreliable ICCU tradeline was published to the lender; that tradeline carried the categories of derogatory information — serious delinquency, amount past due, and amount owed on delinquent accounts — that the lender expressly identified as the key factors adversely affecting Plaintiff's scores (Exhibit D); and the lender denied the $960,000 application on that basis. Publication of an internally inconsistent tradeline carrying the derogatory information the lender identified can be expected to adversely affect a credit decision, and plausibly contributed to the adverse credit decision alleged herein. See Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008).

26.     The inaccuracy is material. A credit entry is inaccurate under the FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (quoting Sepulvado v. CSC Credit

Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)). The ICCU tradeline satisfies the first basis independently: an account reported as both charged off and current is patently incorrect, as is a tradeline whose reported figures are internally inconsistent with one another — a past-due amount less than the charged-off balance. The materiality of a facial inconsistency of this kind does not turn on the dollar size of any single discrepancy; it turns on the fact that the agency published, as the supposed product of "reasonable procedures to assure maximum possible accuracy," a tradeline whose own reported figures are internally inconsistent, rendering the account it describes unreliable as a matter of fact.

27. The tradeline independently satisfies the second basis as well: it reported the categories of derogatory information — serious delinquency, amount past due, and amount owed on delinquent accounts — that the mortgage lender expressly identified as the key factors adversely affecting Plaintiff's credit scores (Exhibit D), and on which the lender denied a $960,000 application. An inaccurate tradeline that carries the very data a lender relies upon in denying credit is misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision, and plausibly contributed to the adverse credit decision alleged herein.

# VI. COUNT II — 15 U.S.C. § 1681i (Against the CRA Defendants)

28. Plaintiff incorporates the preceding paragraphs.

29. Plaintiff disputed the accuracy of the ICCU tradeline with Experian and Equifax, as evidenced by their written reinvestigation results (Exhibits B-1, B-2, and B-6), and with Trans Union through its dispute channel, the records of which are within Trans Union's possession and expected in discovery. Section 1681i(a) required each agency to which Plaintiff submitted a dispute to conduct a reasonable reinvestigation to determine whether the disputed information was accurate and, if it could not be verified, to delete it.

30. Experian and Equifax each failed to conduct a reasonable reinvestigation: on more than one occasion each certified as accurate, and left in place, a tradeline that is internally inconsistent on the face of its own report — including, as to Equifax, an account simultaneously reported as charged off and current. Equifax's own reinvestigation result reflects that it modified fields on the tradeline yet left the inconsistency in place (Exhibit B-6). On information and belief, Trans Union likewise failed to reasonably reinvestigate the inconsistency on its own report — a Past Due amount of $65,000 against a charged-off Balance of $84,801 — the particulars of which are within Trans Union's possession and expected in discovery. No reasonable reinvestigation could repeatedly reach these results. As a direct and proximate result, Plaintiff suffered the injuries described above.

# VII. COUNT III — 15 U.S.C. § 1681s-2(b) (Against Ford Motor Credit Company LLC)

31. Plaintiff incorporates the preceding paragraphs.

32. This Count concerns only the accuracy of specific data reported about Plaintiff's Ford installment auto-loan account (ending #5920) and Ford's investigation of that data after notice of dispute. Plaintiff does not, in this Count, dispute the validity or amount of the underlying debt. Equifax masks this same single account on its records and reinvestigation correspondence as account ending *3837 (Exhibit B-7).

33. Ford's retail installment sale contract for the account establishes an original amount financed of $64,656 (Exhibit F).

34. The amount originally financed on the account is a single, fixed historical fact that does not change over time and cannot legitimately vary from one reporting date to the next. This Count does not rest on inconsistency among the bureaus standing alone, and it is distinct from the inter-bureau balance discrepancy the Court previously addressed (Dkt. 50; Dkt. 78): unlike a fluctuating balance, that fixed original amount cannot be reconciled by differing reporting dates, and Plaintiff identifies which reported figure is inaccurate. As alleged above, Ford's own retail installment sale contract establishes the account's original amount financed as $64,656 (Exhibit F). Plaintiff alleges that the $18,906 High Credit reported on the Equifax tradeline — a figure equal to that account's charged-off balance and past-due amount of $18,906 — is the inaccurate value, and that the correct figure is $64,656 as reflected in Ford's contract. This is borne out on the face of Plaintiff's consumer reports (Exhibits A-2 and A): for the same Ford account (ending #5920) and the same "High Credit" field, Experian reports $64,656 while Equifax reports $18,906, and TransUnion does not report the account at all; the balance ($18,906), past-due amount ($18,906), and "Collection/Chargeoff" status are reported identically by the two bureaus that do report it. Although $18,906 is a lower

figure than the true original amount, the misstatement is materially misleading rather than favorable to Plaintiff. By reporting the Ford account's High Credit as $18,906 — a figure equal to the account's charged-off balance — Equifax's report fails to reflect that the account had been substantially paid down from its origination amount and is consistent with an account that was never serviced. In fact, Plaintiff had paid down the loan by tens of thousands of dollars — approximately $44,900 in scheduled monthly payments — before the account was charged off. Reporting the original loan amount as equal to the charged-off balance obscures that the original obligation was substantially larger and had been substantially repaid, and is misleading in such a way that it can be expected to adversely affect credit decisions. The Equifax consumer report the mortgage lender obtained through Advantage Credit on or about October 3, 2025 included Plaintiff's Equifax credit file — as reflected in the Equifax score of 631 the lender obtained and relied upon (Exhibit D) — and that file carried the $18,906 Ford High Credit, which was thereby published to and relied upon by a third party.

35. Plaintiff disputed the accuracy of the Ford account's reporting with the consumer reporting agencies on more than one occasion, including disputes processed by Experian on or about January 28 (Exhibit B-5), June 12, and June 30, 2025. In resolving Plaintiff's disputes, Experian's own dispute results (Exhibits B-3 and B-4) reported the Ford account's original amount as $64,656 — consistent with Ford's retail installment sale contract (Exhibit F) — while Equifax, after conducting its own reinvestigation of Plaintiff's dispute on or about June 12, 2025, verified and continued to report a High Credit of $18,906 for the same account — modifying the High Credit field yet leaving the $18,906 figure in place (Exhibit B-7) — and the inconsistency remained after each

reinvestigation. Each consumer reporting agency that received a dispute transmitted notice of it to Ford under 15 U.S.C. § 1681i(a)(2), as reflected in the furnisher responses those agencies reported back to Plaintiff (Exhibits B-3, B-4, and B-7). The precise information transmitted by Ford to each consumer reporting agency is uniquely within Ford's possession and is expected to be obtained through discovery. Plaintiff therefore cannot plead the precise contents of Ford's post-dispute furnishing before discovery, but alleges the foregoing facts on information and belief based on the post-reinvestigation consumer reports.

36.     Upon receiving notice of the dispute, Ford had a duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, to review all relevant information, and to correct, modify, or delete information found inaccurate or that could not be verified. As the original creditor, Ford possessed the retail installment sale contract establishing the original amount financed, and a reasonable investigation reviewing that contract should have identified and resolved the discrepancy reflected in the post-dispute consumer reports. A reasonable investigation would, at a minimum, have compared the disputed $18,906 High Credit reported by Equifax against the $64,656 original amount financed stated in Ford's own retail installment sale contract (Exhibit F), and would have reconciled that figure with the $64,656 reflected in Experian's post-dispute reinvestigation results (Exhibits B-3 and B-4) for the same account. Yet following Plaintiff's repeated disputes and each reinvestigation, the materially inconsistent High Credit reporting remained in place. The persistence of that inconsistency after Ford's investigations reasonably supports the inference, alleged on information and belief, that Ford's investigation failed to identify or resolve the discrepancy and therefore was not

reasonable under 15 U.S.C. § 1681s-2(b). As a direct and proximate result of Ford's failure to conduct a reasonable investigation, Plaintiff suffered actual damages, including but not limited to the continued publication of inaccurate information concerning the Ford account, injury to his credit standing and increased credit risk, reputational harm, and emotional distress. To the extent discovery establishes that Ford's post-dispute furnishing contributed to the denial of mortgage credit alleged above, Plaintiff's damages include that harm as well. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156–57 (9th Cir. 2009).

# VIII. WILLFUL AND NEGLIGENT NONCOMPLIANCE (15 U.S.C. §§ 1681n, 1681o)

37.     Defendants' violations were negligent and, in the alternative, willful. An account reported as simultaneously charged off and current is internally contradictory on the face of the agency's own report, and no objectively reasonable reading of the duty to assure maximum possible accuracy permits certifying such a self-contradiction as "accurate." Certifying facially impossible data as accurate, and doing so repeatedly after Plaintiff disputed it on more than one occasion (Exhibits B-1, B-2, and B-6), supports a plausible inference of reckless disregard of the FCRA's accuracy requirements sufficient, at the pleading stage, to allege willfulness in the alternative. Plaintiff does not contend that the internal inconsistency, standing alone, establishes willfulness; whether any Defendant acted willfully is a question that depends on the evidence developed in discovery and is ultimately for the jury. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).

38. Plaintiff is entitled to actual damages under § 1681o and, for willful violations, to statutory and punitive damages under § 1681n.

# IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants for:

a. Actual damages under 15 U.S.C. §§ 1681n and 1681o, including the harm flowing from the denial of the $960,000 mortgage, the suppression of Plaintiff's credit scores, exposure to materially worse credit terms, emotional distress, reputational harm, and out-of-pocket costs;

b. Statutory damages for willful violations under 15 U.S.C. § 1681n;

c. Punitive damages for willful violations under 15 U.S.C. § 1681n;

d. Costs of suit, and attorney's fees to the extent recoverable by law; and

e. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 30th day of June, 2026.

Respectfully submitted,

/s/ Jason Henry Allen

Jason Henry Allen, Plaintiff, Pro Se

2600 E. Seltice Way #235, Post Falls, ID 83854

(323) 377-5620 | Jason.Alistor@gmail.com

VERIFICATION

I, Jason Henry Allen, declare under penalty of perjury under the laws of the United States that the factual allegations in the foregoing Third Amended Complaint are true and correct to the best of my knowledge, except those made on information and belief, which I believe to be true.

Executed on June 30th, 2026.

/s/ Jason Henry Allen

CERTIFICATE OF SERVICE

I certify that on June 30th, 2026, I filed and/or served the foregoing on all counsel of record via

the Court's CM/ECF system and/or U.S. Mail, including counsel for Experian, Equifax, Trans

Union, and Ford Motor Credit Company LLC.

**Experian Information Solutions, Inc.**
Meredith L. Thielbahr
Gordon Rees Scully Mansukhani LLP
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Tel: (206) 695-5100
Email: mthielbahr@grsm.com

**Equifax Information Services LLC**
Charles H. Carpenter
Carpenter Law Firm, PLLC
210 N. Higgins Ave., Suite 336
Missoula, MT 59802
Tel: (406) 549-3171
Email: carpentc@carpenterlawfirmpllc.com

**Trans Union LLC**
Brad P. Miller
Hawley Troxell Ennis & Hawley LLP
877 W. Main Street, Suite 1000
Boise, ID 83702
Tel: (208) 344-6000
Email: bmiller@hawleytroxell.com

Jean E. Schroeder
Hawley Troxell Ennis & Hawley LLP
877 W. Main Street, Suite 1000
Boise, ID 83702

Tel: (208) 344-6000
Email: jschroeder@hawleytroxell.com

Nermy J. Winner
Quilling Selander Lownds Winslett Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
Tel: (214) 871-2100
Email: nwinner@qslwm.com

**Ford Motor Credit Company LLC**
Erica J. White
Elam & Burke, P.A.
251 E. Front Street, Suite 300
Boise, ID 83702
Tel: (208) 343-5454
Email: ejw@elamburke.com

Jed W. Manwaring
Elam & Burke, P.A.
251 E. Front Street, Suite 300
Boise, ID 83702
Tel: (208) 343-5454
Email: jwm@elamburke.com

/s/ Jason Henry Allen

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

JASON HENRY ALLEN,

        Plaintiff, Pro Se,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC.;

EQUIFAX INFORMATION SERVICES LLC;

TRANS UNION LLC; and

FORD MOTOR CREDIT COMPANY LLC,

        Defendants.

Case No. 2:25-cv-00404-BLW

# EXHIBIT 2

## Redlined [Proposed] Third Amended Complaint for Damages; Demand for Jury Trial

*Version of the proposed amended pleading showing — through redlining, underlining, and strikeouts — all differences from Plaintiff's Second Amended Complaint (Dkt. 51), submitted pursuant to Dist. Idaho Loc. Civ. R. 15.1(a)(2).*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT

# OF IDAHO

| | |
|---|---|
| JASON HENRY ALLEN<br><br>Plaintiff, Pro Se<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br><br>EQUIFAX INFORMATION SERVICES LLC;<br><br>TRANS UNION LLC;<br><br>FORD MOTOR CREDIT COMPANY LLC;<br><br>~~M2 LAW GROUP P.C.;~~<br><br>~~MICHAEL J. ARCHIBALD;~~<br><br>Defendants | Case No.:2:25-CV-00404-BLW<br><br>~~SECOND AMENDED COMPLAINT FOR DAMAGES~~<br><br>**REDLINE [Proposed] THIRD AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL** |

## ~~SECOND AMENDED COMPLAINT FOR DAMAGES~~

## [Proposed] THIRD AMENDED COMPLAINT FOR DAMAGES

~~Plaintiff Jason Allen ("Plaintiff"), appearing pro se, alleges as follows:~~

~~I. INTRODUCTION~~

Plaintiff Jason Henry Allen ("Plaintiff"), appearing pro se, alleges as follows:

1

This is an action for damages under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., arising from Defendants' inaccurate reporting, failure to maintain reasonable procedures, failure to conduct lawful reinvestigations after Plaintiff's disputes, and their continued publication of false, derogatory, and misleading information about Plaintiff.

## I. NATURE OF THE ACTION

On December 3rd, 2025, the Court dismissed Plaintiff's prior complaint for lack of specificity, noting Plaintiff had not identified any specific inaccurate tradeline or data point. This Second Amended Complaint cures those deficiencies by identifying each inaccurate account, each error, each CRA responsible, and the results of each reinvestigation failure.

1.         This is an action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. It arises from the consumer reporting agencies' publication of credit information that is internally inconsistent and facially unreliable on the face of their own reports, and their certification of that inaccurate information as "accurate" after Plaintiff disputed it; and from furnisher Ford Motor Credit Company LLC's failure to conduct a reasonable investigation after notice of dispute.

Plaintiff brings this action in good faith and in compliance with Fed. R. Civ. P. 11(b), with factual allegations supported by documentary evidence.

2.         This pleading directly addresses the deficiency the Court identified in its prior orders (Dkt. 50 and Dkt. 78): the absence of an allegation "establishing which figure is false." Plaintiff no longer relies on inconsistency among the bureaus. He identifies

2

inaccuracies established within a single bureau's own report, as of a single reporting date — including an account that one bureau reports as simultaneously charged off and current, and figures within a single report that are internally inconsistent with one another. In each such instance, because the inconsistent entries cannot simultaneously be true, the report necessarily contains inaccurate information within the meaning of the FCRA, and at least one of the inconsistent entries is therefore inaccurate.

## II. JURISDICTION ~~&~~ AND VENUE

~~Jurisdiction is proper under 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this action arises under federal law.~~

3.            This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4.            Venue is proper under 28 U.S.C. § 1391(b): Plaintiff resides in this District ~~because Plaintiff resides in Kootenai~~ (Kootenai County, ~~Idaho, and~~ Idaho), Defendants regularly transact business ~~in Idaho.~~ here, and the events giving rise to the claims occurred here.

## III. PARTIES

5.            Plaintiff Jason Henry Allen is a natural person and a "consumer" ~~as defined by~~ within the meaning of 15 U.S.C. § 1681a(c), residing in Post Falls, Idaho.

6.            Defendants Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union LLC ~~("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax")~~ (the "CRA

Defendants") are each a "consumer reporting ~~agencies" ("CRAs") under~~ agency" within the meaning of 15 U.S.C. § 1681a(f).

7. Defendant Ford Motor Credit Company LLC ~~("Ford Motor Credit") and Idaho Central Credit Union ("ICCU") are furnishers~~ ("Ford") is a "furnisher" of information ~~under~~ to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2.

## IV. FACTUAL ALLEGATIONS

~~A. Plaintiff's Disputes~~

A. The ICCU Tradeline and the Facial Inconsistencies on Each Bureau's Own Report

~~On May 31, 2025 and June 16, 2025, Plaintiff sent written FCRA disputes via certified mail to all three CRAs identifying errors related to Ford Motor Credit, ICCU, personal information, and unauthorized inquiries.~~

8. Defendants reported a single Idaho Central Credit Union ("ICCU") installment auto-loan tradeline, account ending #74538 (the "ICCU tradeline"), on Plaintiff's three-bureau consumer reports dated July 16, 2025 (Reference No. M65173494) and August 24, 2025 (Reference No. M66302311), attached as Exhibits A-2 and A respectively. The tradeline reported the same data on both reports. Equifax masks this same single account on its own records and reinvestigation correspondence as account ending *4317 (Exhibit B-6).

~~Each CRA received the disputes and transmitted Automated Consumer Dispute Verifications ("ACDVs") to Ford Motor Credit and ICCU via the e-OSCAR system.~~

4

9.      As reported on Exhibits A-2 and A (the data being identical on both), the ICCU tradeline contained the following data, by bureau: Balance — TransUnion $84,801, Experian $84,801, Equifax $84,801; High Credit — TransUnion $84,701, Experian $84,701, Equifax $84,801; Past Due — TransUnion $65,000, Experian $84,801, Equifax $84,801; Payment Status — all three "Collection/Chargeoff"; Scheduled Monthly Payment — all three $0.00; most-recent payment-grid entry — TransUnion blank, Experian "CO" (charge-off), Equifax "OK" (current).

~~Despite notice, Defendants failed to conduct reasonable reinvestigations, failed to correct inaccurate information, and continued to publish false data.~~

10.      Each inaccuracy alleged below is established on the face of a single bureau's own report and does not depend on any comparison between bureaus.

~~An item of information is "inaccurate" under the FCRA not only when it is patently false, but also when it is materially misleading, internally inconsistent, or incomplete in a manner that can adversely affect credit decisions. Shaw v. Experian Info. Sols., Inc., 891 F.3d 749, 756 (9th Cir. 2018); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009). Plaintiff's allegations regarding inaccurate reporting are based on documented credit reports and dispute correspondence and are pleaded as statements of fact, not argument.~~

11.      (a) Equifax simultaneously represents the same account as both charged off and current — an internal contradiction on the face of its own report. Equifax reported the account as "Collection/Chargeoff," with the entire $84,801 balance past due and no payment since December 1, 2024, while its own payment-history grid simultaneously

5

displays a status of "OK" (current) for the most recent reporting month. An account that Equifax itself reports as charged off and seriously delinquent cannot accurately be reported as current ("OK") for that same reporting period; the two entries cannot both be true, and at least one is therefore necessarily inaccurate on the face of the report. Because these entries purport to describe the same account as of the same reporting date yet assert mutually exclusive conditions, the report did not merely contain an internal formatting discrepancy; it communicated false information about Plaintiff's account status to the users who received it. A consumer report that simultaneously represents mutually exclusive account conditions presents unreliable information to users of the report, regardless of which individual field ultimately proves incorrect. Plaintiff does not allege that the account should not be reported as charged off; he alleges only that Equifax's report contradicts itself on its face and is therefore inaccurate as to at least one of those entries. More specifically, Plaintiff identifies the "OK" (current) notation as the inaccurate entry: Equifax's own report shows the account was charged off, with the entire $84,801 balance past due and no payment received since December 1, 2024, and Equifax's own payment-history grid records a progression of 30-, 60-, 90-, and 120-day delinquencies on the same account; a "current" notation for an account that Equifax itself reports as seriously delinquent and then charged off is affirmatively incorrect, not a mere formatting artifact.

~~Each inaccuracy alleged in this Complaint is material, objectively verifiable, and capable of confirmation through Defendants' own records and reporting data.~~

12.     (b) On a single reporting date, TransUnion reported the account as "Collection/Chargeoff," with a current Balance of $84,801, yet reported a Past Due

amount of only $65,000 — $19,801 less than the full balance it simultaneously reported as charged off and with no scheduled monthly payment. The reported Balance and Past Due figures are internally inconsistent in the context of the account as reported — a fully charged-off installment account with no payment due and the entire balance owed — rendering the tradeline facially inconsistent. The figures described in this paragraph appeared identically on both the July 16 and August 24, 2025 reports (Exhibits A-2 and A), establishing that the inconsistencies were persistent, not transient artifacts, and incapable of explanation by any difference in reporting dates.

~~Where multiple CRAs report conflicting data for the same account, such inconsistencies render the tradeline materially misleading and therefore inaccurate under the Fair Credit Reporting Act.~~

13. Plaintiff does not, in this pleading, litigate whether the underlying debt is owed; he challenges only the accuracy of the specific data fields identified above. Plaintiff does not rely on inconsistencies among the bureaus; each inaccuracy above is established on the face of a single bureau's own report.

~~A single credit obligation cannot contain multiple origination dates without misleading users of consumer reports. Plaintiff alleges these inconsistencies as factual inaccuracies that a reasonable investigation would have identified and corrected.~~

B. Plaintiff's Disputes and the CRA Defendants' Reinvestigation Failures

~~All allegations herein are made in good faith and in compliance with Federal Rule of Civil Procedure 11(b), with evidentiary support existing or likely to exist after reasonable discovery.~~

7

14. Plaintiff disputed the accuracy of the ICCU tradeline with the CRA Defendants on more than one occasion through their standard dispute channels. Plaintiff's disputes challenged the accuracy of the tradeline's reported payment status and balance information; Plaintiff did not dispute that the account was his. With Experian, Plaintiff's disputes were resolved on or about January 28, 2025 (Exhibit B-1) and June 11, 2025 (Exhibit B-2). With Equifax, Plaintiff's dispute of the same tradeline was resolved on or about July 15, 2025 (Exhibit B-6). Plaintiff also disputed the ICCU tradeline with Trans Union through its dispute channel; the records of that dispute are within Trans Union's possession and are expected to be produced in discovery. The same facial inconsistencies described above were present on the tradeline throughout this period and remained in place after each dispute.

B. SPECIFIC INACCURATE ACCOUNTS — ICCU

15. In response to each dispute, the CRA Defendants reported that the furnisher had "certified" the information as accurate and that the tradeline would "remain" or was "reported correctly" (Exhibits B-1, B-2, and B-6) — leaving in place, on each occasion, the internal charge-off/current contradiction and the related-figure inconsistencies described above. No reasonable reinvestigation could repeatedly certify as accurate an account simultaneously reported as charged off and current, or a tradeline whose own related figures are internally inconsistent.

1. ICCU Auto Loan — Account No. ending in 74538

8

16. Each CRA Defendant transmitted notice of Plaintiff's disputes to the furnisher(s) through the Automated Consumer Dispute Verification ("ACDV") / e-OSCAR system, as contemplated by 15 U.S.C. § 1681i(a)(2).

(Extracted from TU, EX, and EQ July & September 2025 reports)

C. Third-Party Publication and Concrete Injury — the Denial of a $960,000 Mortgage

All three CRAs report this ICCU auto loan as "Derogatory" with a balance of $84,801, but the tradeline contains multiple internal inconsistencies and factual impossibilities:

17. On or about October 3, 2025, a mortgage lender obtained Plaintiff's consumer reports and credit scores from all three CRA Defendants (through reseller Advantage Credit, Inc.) in connection with Plaintiff's application for a $960,000 residential mortgage loan (Loan No. 2510176425).

a. Conflicting Open Dates:
- Trans Union reports 10/18/2024
- Experian & Equifax report 10/01/2024
A single credit obligation cannot have multiple origination dates without misleading users of consumer reports.

18. The same internally inconsistent figures appeared on Plaintiff's reports in two consecutive months — July 16 and August 24, 2025 (Exhibits A-2 and A) — and no dispute resulted in their correction. Based on that identical and uncorrected reporting across consecutive months, those same figures — including Equifax's reporting of the Ford account's High Credit as $18,906 — remained on the consumer reports the

9

mortgage lender obtained approximately six weeks later, on or about October 3, 2025, the ICCU tradeline being Plaintiff's principal derogatory installment account on each report.

b. Conflicting High Credit:

-TU reports $84,701

-EX reports $84,701

-EQ reports $84,801

A single credit obligation cannot have multiple varying balances without misleading users of consumer reports.

19. On October 16, 2025, the lender issued a written Statement of Credit Denial (Exhibit D) denying the application. The denial stated the decision was "based in whole or part on information obtained in a report from the consumer-reporting agency," and identified, among the "key factors that adversely affected" Plaintiff's credit scores: "SERIOUS DELINQUENCY," "AMOUNT PAST DUE ON ACCOUNTS," and "AMOUNT OWED ON DELINQUENT ACCOUNTS." The scores the lender obtained and relied upon were Experian 657, TransUnion 643, and Equifax 631.

c. Conflicting Past-Due Amounts:

-TU: $65,000

-EX: $84,801

-EQ: $84,801

A single credit obligation cannot have multiple past-due balances without misleading users of consumer reports.

20.    The CRA Defendants' publication of Plaintiff's reports to the mortgage lender was a publication to a third party. The balance, past-due, and payment-status fields on the ICCU tradeline — the very fields reported inconsistently — are among the categories of information considered by credit-scoring models and mortgage underwriting systems. Plaintiff alleges that the internally inconsistent reporting of those fields suppressed his credit scores below the levels that accurate, internally consistent reporting of the same account would have produced, and that the lender relied on those scores and on the tradeline's derogatory data in denying the application. The injury Plaintiff alleges arises from the publication of the internally inconsistent tradeline itself, separate from the bare fact that the account was charged off: the lender received and relied upon a tradeline whose own reported figures contradict one another in the very categories — serious delinquency, amount past due, and amount owed on delinquent accounts — that it cited in denying the loan (Exhibit D).

d. Charge-Off Status is Unsupported:

-CRAs report "Collection/Chargeoff," but no 30-60-90-120 delinquency chain exists in TU's file.

-EX and EQ show conflicting delinquency histories.

21.    As a direct and proximate result, Plaintiff was denied a $960,000 mortgage; suffered suppression of his credit scores and exposure to materially worse credit terms; and incurred emotional distress, reputational harm, and out-of-pocket costs.

e. Payment History is Contradictory:

-Experian shows CO 150 120 90 60 30,

11

- Equifax shows OK 120 120 90 60 30,

- TransUnion shows no lates at all.

V. COUNT I — 15 U.S.C. § 1681e(b) (Against the CRA Defendants)

These contradictory histories render the tradeline **facially inaccurate**, satisfying *Shaw v. Experian*, 891 F.3d 749 (9th Cir. 2018).

22.     Plaintiff incorporates the preceding paragraphs.

Plaintiff disputed these inaccuracies; CRAs refused to correct them.

23.     Section 1681e(b) requires a consumer reporting agency, whenever it prepares a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

A reasonable reinvestigation would have revealed these discrepancies on the face of Defendants' own records without reliance on furnisher verification.

24.     The CRA Defendants reported information that was inaccurate on its face — most directly, an account that Equifax simultaneously represents as both charged off and current (Equifax); a Past Due amount materially less than the charged-off Balance on the same report (TransUnion) — each of which is internally inconsistent within a single bureau's own report. A reasonable procedure to assure maximum possible accuracy should detect data that is mutually exclusive on the face of a single tradeline — for example, an account reported as both charged off and current. Whether the CRA Defendants' procedures were reasonable is ordinarily a question for the jury. See Gross v. CitiMortgage, Inc., 33 F.4th 1246 (9th Cir. 2022); Gorman, 584 F.3d at 1157.

12

~~These inaccuracies caused substantial harm to Plaintiff's creditworthiness and scores.~~

25. This inaccurate information was published to a third party — the mortgage lender — on or about October 3, 2025, and resulted from the CRA Defendants' failure to follow reasonable procedures to assure maximum possible accuracy. The pleaded causal chain plausibly connects the inaccurate reporting to the adverse decision: a report that is internally inconsistent on its face has not been prepared with maximum possible accuracy; the unreliable ICCU tradeline was published to the lender; that tradeline carried the categories of derogatory information — serious delinquency, amount past due, and amount owed on delinquent accounts — that the lender expressly identified as the key factors adversely affecting Plaintiff's scores (Exhibit D); and the lender denied the $960,000 application on that basis. Publication of an internally inconsistent tradeline carrying the derogatory information the lender identified can be expected to adversely affect a credit decision, and plausibly contributed to the adverse credit decision alleged herein. See Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008).

~~Each disputed inaccuracy identified herein was objectively verifiable through Defendants' own reporting data and did not require legal interpretation or subjective judgment.~~

26. The inaccuracy is material. A credit entry is inaccurate under the FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (quoting Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)). The ICCU tradeline satisfies the first

basis independently: an account reported as both charged off and current is patently incorrect, as is a tradeline whose reported figures are internally inconsistent with one another — a past-due amount less than the charged-off balance. The materiality of a facial inconsistency of this kind does not turn on the dollar size of any single discrepancy; it turns on the fact that the agency published, as the supposed product of "reasonable procedures to assure maximum possible accuracy," a tradeline whose own reported figures are internally inconsistent, rendering the account it describes unreliable as a matter of fact.

C. SPECIFIC INACCURATE ACCOUNTS — FORD MOTOR CREDIT

27. The tradeline independently satisfies the second basis as well: it reported the categories of derogatory information — serious delinquency, amount past due, and amount owed on delinquent accounts — that the mortgage lender expressly identified as the key factors adversely affecting Plaintiff's credit scores (Exhibit D), and on which the lender denied a $960,000 application. An inaccurate tradeline that carries the very data a lender relies upon in denying credit is misleading in such a way and to such an extent that it can be expected to adversely affect a credit decision, and plausibly contributed to the adverse credit decision alleged herein.

Ford Motor Credit — Account No. ending in 5920

VI. COUNT II — 15 U.S.C. § 1681i (Against the CRA Defendants)

(Extracted from TU and EX July & September 2025 reports)

28. Plaintiff incorporates the preceding paragraphs.

14

~~Trans Union and Experian report this account as "Derogatory," but the tradeline contains~~
~~multiple factual errors:~~

29.     Plaintiff disputed the accuracy of the ICCU tradeline with Experian and Equifax, as evidenced by their written reinvestigation results (Exhibits B-1, B-2, and B-6), and with Trans Union through its dispute channel, the records of which are within Trans Union's possession and expected in discovery. Section 1681i(a) required each agency to which Plaintiff submitted a dispute to conduct a reasonable reinvestigation to determine whether the disputed information was accurate and, if it could not be verified, to delete it.

~~a. Conflicting High Credit:~~

~~-TU reports $64,656~~

~~-EX reports $18,906~~

~~A 46,000-dollar discrepancy in "high credit" is an obvious factual inaccuracy.~~

30.     Experian and Equifax each failed to conduct a reasonable reinvestigation: on more than one occasion each certified as accurate, and left in place, a tradeline that is internally inconsistent on the face of its own report — including, as to Equifax, an account simultaneously reported as charged off and current. Equifax's own reinvestigation result reflects that it modified fields on the tradeline yet left the inconsistency in place (Exhibit B-6). On information and belief, Trans Union likewise failed to reasonably reinvestigate the inconsistency on its own report — a Past Due amount of $65,000 against a charged-off Balance of $84,801 — the particulars of which are within Trans Union's possession and expected in discovery. No reasonable

reinvestigation could repeatedly reach these results. As a direct and proximate result, Plaintiff suffered the injuries described above.

b. Missing Equifax Tradeline:

~~Equifax does not report the account at all.~~

~~At least one CRA must be wrong.~~

VII. COUNT III — 15 U.S.C. § 1681s-2(b) (Against Ford Motor Credit Company LLC)

~~c. Unsupported Charge-Off:~~

~~Both CRAs show "Collection/Chargeoff," yet payment histories do not support a~~

~~charge-off event.~~

~~No consistent "Date of First Delinquency" is reported.~~

31.    Plaintiff incorporates the preceding paragraphs.

~~d. Conflicting Dates:~~

~~Date of last payment conflicts (02/20/25 vs 01/01/25).~~

~~Date last active also conflicts.~~

32.    This Count concerns only the accuracy of specific data reported about Plaintiff's Ford installment auto-loan account (ending #5920) and Ford's investigation of that data after notice of dispute. Plaintiff does not, in this Count, dispute the validity or amount of the underlying debt. Equifax masks this same single account on its records and reinvestigation correspondence as account ending *3837 (Exhibit B-7).

~~Plaintiff disputed these inaccuracies; CRAs refused to correct them.~~

16

33.     Ford's retail installment sale contract for the account establishes an original amount financed of $64,656 (Exhibit F).

~~A reasonable reinvestigation would have revealed these discrepancies on the face of Defendants' own records without reliance on furnisher verification.~~

34.     The amount originally financed on the account is a single, fixed historical fact that does not change over time and cannot legitimately vary from one reporting date to the next. This Count does not rest on inconsistency among the bureaus standing alone, and it is distinct from the inter-bureau balance discrepancy the Court previously addressed (Dkt. 50; Dkt. 78): unlike a fluctuating balance, that fixed original amount cannot be reconciled by differing reporting dates, and Plaintiff identifies which reported figure is inaccurate. As alleged above, Ford's own retail installment sale contract establishes the account's original amount financed as $64,656 (Exhibit F). Plaintiff alleges that the $18,906 High Credit reported on the Equifax tradeline — a figure equal to that account's charged-off balance and past-due amount of $18,906 — is the inaccurate value, and that the correct figure is $64,656 as reflected in Ford's contract. This is borne out on the face of Plaintiff's consumer reports (Exhibits A-2 and A): for the same Ford account (ending #5920) and the same "High Credit" field, Experian reports $64,656 while Equifax reports $18,906, and TransUnion does not report the account at all; the balance ($18,906), past-due amount ($18,906), and "Collection/Chargeoff" status are reported identically by the two bureaus that do report it. Although $18,906 is a lower figure than the true original amount, the misstatement is materially misleading rather than favorable to Plaintiff. By reporting the Ford account's High Credit as $18,906 — a figure equal to the account's charged-off balance — Equifax's report fails to reflect that the

account had been substantially paid down from its origination amount and is consistent with an account that was never serviced. In fact, Plaintiff had paid down the loan by tens of thousands of dollars — approximately $44,900 in scheduled monthly payments — before the account was charged off. Reporting the original loan amount as equal to the charged-off balance obscures that the original obligation was substantially larger and had been substantially repaid, and is misleading in such a way that it can be expected to adversely affect credit decisions. The Equifax consumer report the mortgage lender obtained through Advantage Credit on or about October 3, 2025 included Plaintiff's Equifax credit file — as reflected in the Equifax score of 631 the lender obtained and relied upon (Exhibit D) — and that file carried the $18,906 Ford High Credit, which was thereby published to and relied upon by a third party.

~~Each disputed inaccuracy identified herein was objectively verifiable through Defendants' own reporting data and did not require legal interpretation or subjective judgment.~~

35. Plaintiff disputed the accuracy of the Ford account's reporting with the consumer reporting agencies on more than one occasion, including disputes processed by Experian on or about January 28 (Exhibit B-5), June 12, and June 30, 2025. In resolving Plaintiff's disputes, Experian's own dispute results (Exhibits B-3 and B-4) reported the Ford account's original amount as $64,656 — consistent with Ford's retail installment sale contract (Exhibit F) — while Equifax, after conducting its own reinvestigation of Plaintiff's dispute on or about June 12, 2025, verified and continued to report a High Credit of $18,906 for the same account — modifying the High Credit field yet leaving the $18,906 figure in place (Exhibit B-7) — and the inconsistency remained after each

reinvestigation. Each consumer reporting agency that received a dispute transmitted notice of it to Ford under 15 U.S.C. § 1681i(a)(2), as reflected in the furnisher responses those agencies reported back to Plaintiff (Exhibits B-3, B-4, and B-7). The precise information transmitted by Ford to each consumer reporting agency is uniquely within Ford's possession and is expected to be obtained through discovery. Plaintiff therefore cannot plead the precise contents of Ford's post-dispute furnishing before discovery, but alleges the foregoing facts on information and belief based on the post-reinvestigation consumer reports.

D. PERSONAL INFORMATION INACCURACIES

36.     Upon receiving notice of the dispute, Ford had a duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, to review all relevant information, and to correct, modify, or delete information found inaccurate or that could not be verified. As the original creditor, Ford possessed the retail installment sale contract establishing the original amount financed, and a reasonable investigation reviewing that contract should have identified and resolved the discrepancy reflected in the post-dispute consumer reports. A reasonable investigation would, at a minimum, have compared the disputed $18,906 High Credit reported by Equifax against the $64,656 original amount financed stated in Ford's own retail installment sale contract (Exhibit F), and would have reconciled that figure with the $64,656 reflected in Experian's post-dispute reinvestigation results (Exhibits B-3 and B-4) for the same account. Yet following Plaintiff's repeated disputes and each reinvestigation, the materially inconsistent High Credit reporting remained in place. The persistence of that inconsistency after Ford's investigations reasonably supports the inference, alleged on information and belief, that

Ford's investigation failed to identify or resolve the discrepancy and therefore was not reasonable under 15 U.S.C. § 1681s-2(b). As a direct and proximate result of Ford's failure to conduct a reasonable investigation, Plaintiff suffered actual damages, including but not limited to the continued publication of inaccurate information concerning the Ford account, injury to his credit standing and increased credit risk, reputational harm, and emotional distress. To the extent discovery establishes that Ford's post-dispute furnishing contributed to the denial of mortgage credit alleged above, Plaintiff's damages include that harm as well. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1156–57 (9th Cir. 2009).

~~All CRAs reported incorrect personal identifiers, including:~~

## VIII. WILLFUL AND NEGLIGENT NONCOMPLIANCE (15 U.S.C. §§ 1681n, 1681o)

~~Multiple contradictory versions of Plaintiff's name~~

37.     Defendants' violations were negligent and, in the alternative, willful. An account reported as simultaneously charged off and current is internally contradictory on the face of the agency's own report, and no objectively reasonable reading of the duty to assure maximum possible accuracy permits certifying such a self-contradiction as "accurate." Certifying facially impossible data as accurate, and doing so repeatedly after Plaintiff disputed it on more than one occasion (Exhibits B-1, B-2, and B-6), supports a plausible inference of reckless disregard of the FCRA's accuracy requirements sufficient, at the pleading stage, to allege willfulness in the alternative. Plaintiff does not contend that the internal inconsistency, standing alone, establishes willfulness; whether any Defendant

acted willfully is a question that depends on the evidence developed in discovery and is ultimately for the jury. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007).

Incorrect address variations (e.g., "2600 Seltice Wy 111" vs. "2600 E Seltice Way #235")

38. Plaintiff is entitled to actual damages under § 1681o and, for willful violations, to statutory and punitive damages under § 1681n.

Prior addresses where Plaintiff never lived

IX. PRAYER FOR RELIEF

Employment entries appearing only on TransUnion

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants for:

(IdentityIQ September 2025, Personal Information Section).

a. Actual damages under 15 U.S.C. §§ 1681n and 1681o, including the harm flowing from the denial of the $960,000 mortgage, the suppression of Plaintiff's credit scores, exposure to materially worse credit terms, emotional distress, reputational harm, and out-of-pocket costs;

Plaintiff disputed the false personal identifiers; CRAs refused to delete them.

b. Statutory damages for willful violations under 15 U.S.C. § 1681n;

~~Each disputed inaccuracy identified herein was objectively verifiable through Defendants' own reporting data and did not require legal interpretation or subjective judgment.~~

c. Punitive damages for willful violations under 15 U.S.C. § 1681n;

~~E. UNAUTHORIZED INQUIRIES~~

d. Costs of suit, and attorney's fees to the extent recoverable by law; and

~~The following inquiries appeared on Plaintiff's files without permissible purpose under 15 U.S.C. § 1681b:~~

e. Such other and further relief as the Court deems just and proper.

~~CBNA — Equifax, 11/11/2024~~

DEMAND FOR JURY TRIAL

~~Lifted Tru — Equifax, 10/18/2024~~

~~Lifted Truck — TransUnion, 10/18/2024~~

~~Plaintiff did not apply for credit with these entities and did not authorize these inquiries.~~

~~Plaintiff disputed the inquiries; CRAs failed to remove them.~~

~~Each disputed inaccuracy identified herein was objectively verifiable through Defendants' own reporting data and did not require legal interpretation or subjective judgment.~~

~~V. CAUSES OF ACTION~~

Count I — 15 U.S.C. § 1681e(b)

(Failure to Follow Reasonable Procedures)

CRAs published inaccurate ICCU, Ford, personal identity, and inquiry data.

The inaccurate reporting described above violates § 1681e(b).

Count II — 15 U.S.C. § 1681i

(Failure to Reinvestigate)

Plaintiff's disputes triggered CRAs' duty to reinvestigate.

CRAs failed to delete or correct the ICCU, Ford, identity, and inquiry inaccuracies within 30 days.

Count III — 15 U.S.C. § 1681s-2(b)

(Furnisher Liability: ICCU and Ford)

Upon receiving ACDVs, ICCU and Ford were required to conduct reasonable investigations and correct errors.

ICCU and Ford failed to do so and continued to furnish inaccurate data.

Upon receipt of Plaintiff's disputes via e-OSCAR ACDVs, Defendants Ford Motor Credit and ICCU were statutorily obligated to conduct a reasonable investigation, review all relevant information provided by the CRAs, and correct or delete inaccurate data. 15 U.S.C. §1681s-2(b)(1)(A)-(E). Their failure to do so gives rise to a private right of action.

Count IV — 15 U.S.C. § 1681b

(Unauthorized Pulls of Consumer Reports)

The three inquiries listed above were made without a permissible purpose and reduced Plaintiff's credit score.

Defendants bear the burden of establishing a permissible purpose for obtaining Plaintiff's consumer report. Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 674 (9th Cir. 2010).

Willful and Negligent Noncompliance

(§§ 1681n, 1681o)

Defendants acted willfully and negligently, entitling Plaintiff to actual, statutory, punitive damages, and costs.

Defendants' violations were willful in that they continued reporting the same inaccuracies after multiple disputes, after internal contradictions were apparent on the face of their own files, and after statutory deadlines had expired, demonstrating reckless disregard for Plaintiff's rights.

VI. DAMAGES

As a direct and proximate result of Defendants' reporting of the inaccurate tradelines and inquiries described above, Plaintiff's credit scores declined, his credit risk profile was inflated, and he was subjected to adverse credit terms, emotional distress, and reputational harm.

Plaintiff suffered:

Emotional distress

Reputational harm

Loss of creditworthiness

Increased interest rates

Denial of credit opportunities

Out-of-pocket expenses for disputes and monitoring

Plaintiff seeks:

Actual damages

Statutory damages up to $1,000 per violation

Punitive damages for willful misconduct

Attorney's fees and costs (equitable award for pro se litigant)

Injunctive relief requiring deletion/correction of inaccurate data

VII. NECESSITY OF INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff seeks injunctive and declaratory relief pursuant to 15 U.S.C. §§ 1681n(a)(2), 1681o(a)(2), and the Court's equitable powers.

Despite receiving multiple written disputes identifying specific, objectively verifiable inaccuracies, Defendants failed to correct or delete the inaccurate tradelines, personal identifiers, and unauthorized inquiries described herein.

Defendants' continued reporting of the same inaccuracies after notice demonstrates an inability or unwillingness to ensure the accuracy and integrity of Plaintiff's consumer reports.

Absent injunctive relief, Plaintiff faces a substantial and ongoing risk of continued dissemination of false and misleading credit information, resulting in further damage to his creditworthiness, reputation, and emotional well-being.

Monetary damages alone are insufficient to remedy this ongoing harm, as inaccurate information remains in Defendants' files and continues to be furnished to third parties.

Injunctive relief is therefore necessary to require Defendants to:

a. Conduct lawful and reasonable reinvestigations consistent with the FCRA;

b. Delete or correct all inaccurate information identified in this Complaint; and

c. Implement reasonable procedures to prevent the recurrence of such inaccuracies.

VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

IX. PRAYER FOR RELIEF

DATED this 30th day of June, 2026.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

Respectfully submitted,

A. Awarding actual, statutory, and punitive damages;

B. Ordering removal or correction of all inaccurate reporting;

C. Awarding equitable attorney's fees and costs;

D. Awarding any further relief the Court deems just.

/s/ Jason Henry Allen

Jason Henry Allen, Plaintiff, Pro Se

2600 E. Seltice Way #235, Post Falls, ID 83854

(323) 377-5620 | Jason.Alistor@gmail.com

**VERIFICATION**

I, Jason Allen, verify under penalty of perjury that the facts alleged herein are true and correct to the best of my knowledge.

I, Jason Henry Allen, declare under penalty of perjury under the laws of the United States that the factual allegations in the foregoing Third Amended Complaint are true and correct to the best of my knowledge, except those made on information and belief, which I believe to be true.

Dated December 15, 2025Executed on June 30th, 2026.

Respectfully submitted,

/s/ Jason Henry Allen

——— /s/ By:——— Jason-Henry:Allen——

Jason-Henry:Allen 2600 E. Seltice Way

Post Falls, ID 83854

(323) 377-5620

Jason.Alistor@gmail.com

Plaintiff, In Propria Persona

**CERTIFICATE OF SERVICE**

~~I certify that on December _____, 2025, a true and correct copy of the foregoing was served via CM/ECF, electronic mail, and/or first-class mail, postage prepaid, upon all counsel of record listed below.~~

I certify that on June 30th, 2026, I filed and/or served the foregoing on all counsel of record via the Court's CM/ECF system and/or U.S. Mail, including counsel for Experian, Equifax, Trans Union, and Ford Motor Credit Company LLC.

Experian Information Solutions, Inc.

Meredith L. Thielbahr

Gordon Rees Scully Mansukhani LLP

701 Fifth Avenue, Suite 2100

Seattle, WA 98104

Tel: (206) 695-5100

Email: mthielbahr@grsm.com

Equifax Information Services LLC

Charles H. Carpenter

Carpenter Law Firm, PLLC

210 N. Higgins Ave., Suite 336

Missoula, MT 59802

Tel: (406) 549-3171

Email: carpentc@carpenterlawfirmpllc.com

Trans Union LLC

Brad P. Miller

Hawley Troxell Ennis & Hawley LLP

877 W. Main Street, Suite 1000

Boise, ID 83702

Tel: (208) 344-6000

Email: bmiller@hawleytroxell.com

Jean E. Schroeder

Hawley Troxell Ennis & Hawley LLP

877 W. Main Street, Suite 1000

Boise, ID 83702

Tel: (208) 344-6000

Email: jschroeder@hawleytroxell.com

Nermy J. Winner

Quilling Selander Lownds Winslett Moser, P.C.

2001 Bryan Street, Suite 1800

Dallas, TX 75201

Tel: (214) 871-2100

Email: nwinner@qslwm.com

Ford Motor Credit Company LLC

Erica J. White

Elam & Burke, P.A.

251 E. Front Street, Suite 300

Boise, ID 83702

Tel: (208) 343-5454

Email: ejw@elamburke.com

Jed W. Manwaring

Elam & Burke, P.A.

251 E. Front Street, Suite 300

Boise, ID 83702

Tel: (208) 343-5454

Email: jwm@elamburke.com

~~M2 Law Group, P.C. / Michael J. Archibald~~

~~Michael J. Archibald~~

~~M2 Law Group, P.C.~~

~~P.O. Box 330~~

~~Meridian, ID 83680~~

~~Tel: (208) 887-9911~~

~~Email: marchibald@m2law.net~~

~~/s/ Jason Henry Allen~~

/s/ Jason Henry Allen

# EXHIBIT INDEX

Allen v. Experian, No. 2:25-cv-00404-BLW (D. Idaho)
Exhibits to the Third Amended Complaint

| | |
|---|---|
| **Exhibit A** | Three-Bureau Credit Report — August 24, 2025 (Ref. M66302311) |
| **Exhibit A-2** | Three-Bureau Credit Report — July 16, 2025 (Ref. M65173494) |
| **Exhibit B-1** | Experian Dispute Result — ICCU "Remains" — January 28, 2025 |
| **Exhibit B-2** | Experian Dispute Result — ICCU "Remains" — June 11, 2025 |
| **Exhibit B-6** | Equifax Dispute Result — ICCU auto loan (Acct *4317 / #74538) — July 15, 2025 (Conf. 5189578121) |
| **Exhibit B-3** | Experian Dispute Result — Ford Motor Credit Co. — June 12, 2025 (Rpt 3659-5888-14) |
| **Exhibit B-4** | Experian Dispute Result — Ford Motor Credit Co. — June 30, 2025 (Rpt 2083-8921-02) |
| **Exhibit B-5** | Experian Dispute Result — Ford Motor Credit Co. — January 28, 2025 (Rpt 3448-2796-94) |
| **Exhibit B-7** | Equifax Dispute Result — Ford Motor Credit Co. (Acct *3837 / #5920) — June 12, 2025 (Conf. 5157602968) |
| **Exhibit D** | Statement of Credit Denial — $960,000 Mortgage — October 16, 2025 |
| **Exhibit F** | Ford Retail Installment Sale Contract — July 2, 2020 (Amount Financed $64,656) |

*(Exhibit C [certified disputes] and Exhibit E [deposit receipts] are not used in this pleading.)*

# EXHIBIT A

Three-Bureau Credit Report — August 24, 2025 (Ref. M66302311)



# Credit Report

Credit reports are key to helping you confidently protect and manage your identity. You can rest assured - reviewing your report does not negatively impact your standing or score. Financial institutions, employers and insurers use credit reports to gain insight into your financial profile. Because they provide a record of your present and past credit use, credit reports may determine whether or not you will be offered credit, and on what terms. Inaccurate or fraudulent account information on credit reports can result in denial of credit, higher loan and insurance rates and even rejection for employment. The Federal Trade Commission (FTC) has prepared A Summary of Your Rights Under the Fair Credit Reporting Act, you may also find additional information on their website www.FTC.gov/credit.

Understanding your credit score and the factors that impact it will prepare you to make the best possible decisions for your financial future. Want help reading your report? We've prepared a quick educational guide for you: How to Read, Use and Act on Your Credit Report. If you find inaccurate information on your report, you may contact one of our Credit Specialists to help dispute this information directly with the credit reporting agencies.

Show Less

## Purchase Report

Report History:
08/24/2025 - 3B ∨

## Three Bureau Credit Report

**Reference #:** M66302311
**Report Date:** 08/24/2025

**Quick Links:** Credit Score / Summary / Account History / Inquiries / Creditor Contacts

Below is your personal information as it appears in your credit file. This information includes your legal name, current and previous addresses, employment information and other details.

| | | | |
|---|---|---|---|
| Credit Report Date: | 08/24/2025 | 08/24/2025 | 08/24/2025 |
| Name: | JASON HENRY ALLEN | JASON ALLEN | JASON HENRY ALLEN |
| Also Known As: | - | - | - |
| Former: | - | - | - |
| Date of Birth: | | | |

**Current Address(es):**

**Previous Address(es):**

**Employers:**





Your Credit Score is a representation of your overall credit health. Most lenders utilize some form of credit scoring to help determine your credit worthiness.

| | | | |
|---|---|---|---|
| **Credit Score:** | 632 | 623 | 621 |
| **Lender Rank:** | Fair | Fair | Fair |
| **Score Scale:** | 300-850 | 300-850 | 300-850 |

**The date that you opened your oldest account is too recent** [+]
**You have too many delinquent or derogatory accounts** [+]
**Too many installment accounts with a delinquent or derogatory payment status** [+]
**Lack of sufficient relevant real estate account information** [+]

The date that you opened your oldest account is too recent
Too many installment accounts with a delinquent or derogatory payment status
You have too many delinquent or derogatory accounts
Lack of sufficient relevant real estate account information

The score(s) on your IdentityIQ credit report (using the VantageScore® 3.0 model) are provided as a tool to help you understand how lenders may view the data contained in your credit reports and evaluate your credit risk. We provide these scores solely for educational purposes. IdentityIQ does not offer credit; delivery of these scores does not qualify you for any loan. The scoring model your lender uses may be different than the VantageScore® 3.0. As a result, the score and score factors we have delivered may show differences when compared to the score and score factors produced by your lender's scoring model. Please also understand that lenders use multiple sources of information when underwriting a loan and making lending decisions. Credit scores are just one factor that may be used and each lender will have different criteria they consider.

IdentityIQ provides informational materials along with your credit report(s) and score(s) these materials are educational in nature and intended to broaden your understanding of how credit scoring works. They should not be construed as advice in handling your financial problems or making financial decisions. If you are having trouble keeping up with your bill payments or experiencing other financial difficulties, please contact a non-profit credit counseling service for assistance. These materials are for educational purposes only.

i Below is an overview of your present and past credit status including open and closed accounts and balance information.

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| Total Accounts: | 22 | 24 | 23 |
| Open Accounts: | 11 | 11 | 11 |
| Closed Accounts: | 11 | 13 | 12 |
| Delinquent: | 0 | 0 | 0 |
| Derogatory: | 1 | 2 | 2 |
| Collection: | 0 | 0 | 0 |
| Balances: | $107,710.00 | $126,531.00 | $126,616.00 |
| Payments: | $336.00 | $910.00 | $0.00 |
| Public Records: | 0 | 0 | 0 |
| Inquiries(2 years): | 3 | 3 | 5 |

i Information on accounts you have opened in the past is displayed below.

| | | | |
|---|---|---|---|
| **Account #:** | 1826**** | 1826**** | 1826**** |
| **Account Type:** | Installment | Installment | Installment |
| **Account Type - Detail:** | Auto Loan | Auto Loan | - |
| **Bureau Code:** | Individual | Individual | Individual |
| **Account Status:** | Closed | Paid | Paid |
| **Monthly Payment:** | $0.00 | $0.00 | $0.00 |
| **Date Opened:** | 07/31/2014 | 07/01/2014 | 07/01/2014 |
| **Balance:** | $0.00 | $0.00 | $0.00 |
| **No. of Months (terms):** | 66 | 66 | 66 |
| **High Credit:** | $24,576.00 | $24,576.00 | $24,576.00 |
| **Credit Limit:** | $0.00 | $0.00 | $0.00 |
| **Past Due:** | $0.00 | $0.00 | $0.00 |
| **Payment Status:** | Current | Current | Current |
| **Last Reported:** | 06/01/2017 | 06/10/2017 | 10/01/2019 |
| **Comments:** | Dispute resolved; customer disagrees | Subscriber reports dispute resolved - consumer disagrees. | Consumer disputes after resolution Closed or paid account/zero balance |
| **Date Last Active:** | 06/01/2017 | 06/01/2017 | 04/01/2017 |
| **Date of Last Payment:** | 04/10/2017 | 05/30/2017 | 04/01/2017 |

## Two-Year payment history

( Legend )

| Month | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 17 | 17 | 17 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

| | | | |
|---|---|---|---|
| **Account #:** | 74538**** | 74538**** | 74538**** |
| **Account Type:** | Installment | Installment | Installment |

| | | | |
|---|---|---|---|
| Account Type - Detail: | Auto Loan | Auto Loan | Auto Loan |
| Bureau Code: | Individual | Individual | Individual |
| Account Status: | Derogatory | Derogatory | Derogatory |
| Monthly Payment: | $0.00 | $0.00 | $0.00 |
| Date Opened: | 10/18/2024 | 10/01/2024 | 10/01/2024 |
| Balance: | $84,801.00 | $84,801.00 | $84,801.00 |
| No. of Months (terms): | 72 | 72 | 72 |
| High Credit: | $84,701.00 | $84,701.00 | $84,801.00 |
| Credit Limit: | $0.00 | $0.00 | $0.00 |
| Past Due: | $65,000.00 | $84,801.00 | $84,801.00 |
| Payment Status: | Collection/Chargeoff | Collection/Chargeoff | Collection/Chargeoff |
| Last Reported: | 07/31/2025 | 07/31/2025 | 07/01/2025 |
| Comments: | Charged off as bad debt Profit and loss write-off | Unpaid balance reported as a loss by the credit grantor. | Charged off account Auto |
| Date Last Active: | 06/30/2025 | 06/01/2025 | 12/01/2024 |
| Date of Last Payment: | - | - | 12/01/2024 |

## Two-Year payment history

( Legend )

| Month | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 23 | 23 | 23 | 23 | 23 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

| | | | |
|---|---|---|---|
| Account #: | 517805808019**** | 51780580**** | 51780580**** |
| Account Type: | Revolving | Revolving | Revolving |
| Account Type - Detail: | Credit Card | Credit Card | - |
| Bureau Code: | Individual | Individual | Individual |
| Account Status: | Paid | Paid | Paid |
| Monthly Payment: | $0.00 | $0.00 | $0.00 |

| Month | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 22 | 22 | 22 | 22 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

| | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | | 5920**** | 5920**** |
| Account Type: | | Installment | Installment |
| Account Type - Detail: | | Auto Loan | Auto Loan |
| Bureau Code: | | Individual | Individual |
| Account Status: | | Derogatory | Derogatory |
| Monthly Payment: | | $0.00 | $0.00 |
| Date Opened: | | 07/01/2020 | 07/01/2020 |
| Balance: | | $18,906.00 | $18,906.00 |
| No. of Months (terms): | | 74 | 0 |
| High Credit: | | $64,656.00 | $18,906.00 |
| Credit Limit: | | $0.00 | $0.00 |
| Past Due: | | $18,906.00 | $18,906.00 |
| Payment Status: | | Collection/Chargeoff | Collection/Chargeoff |
| Last Reported: | | 08/01/2025 | 08/01/2025 |
| Comments: | | Unpaid balance reported as a loss by the credit grantor. | Charged off account Auto |
| Date Last Active: | | 06/01/2025 | 01/01/2025 |
| Date of Last Payment: | | 02/20/2025 | 01/01/2025 |

## Two-Year payment history

( Legend )

| Month | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 23 | 23 | 23 | 23 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |

| | | | |
|---|---|---|---|
| **Account #:** | 601919302835**** | 60191930**** | 601919302835**** |
| **Account Type:** | Revolving | Revolving | Revolving |
| **Account Type - Detail:** | Charge account | Charge account | - |
| **Bureau Code:** | Individual | Individual | Individual |
| **Account Status:** | Paid | Paid | Paid |
| **Monthly Payment:** | $0.00 | $0.00 | $0.00 |
| **Date Opened:** | 03/11/2019 | 03/01/2019 | 03/01/2019 |
| **Balance:** | $0.00 | $0.00 | $0.00 |
| **No. of Months (terms):** | 0 | 0 | 0 |
| **High Credit:** | $5,235.00 | $5,235.00 | $6,000.00 |
| **Credit Limit:** | $6,000.00 | $6,000.00 | $0.00 |
| **Past Due:** | $0.00 | $0.00 | $0.00 |
| **Payment Status:** | Current | Current | Current |
| **Last Reported:** | 06/22/2023 | 03/24/2023 | 06/01/2023 |
| **Comments:** | Inactive account | Account has been closed due to inactivity. | Closed or paid account/zero balance<br><br>Account closed due to inactivity |
| **Date Last Active:** | 02/02/2020 | 03/01/2023 | 02/01/2020 |
| **Date of Last Payment:** | 02/02/2020 | 02/02/2020 | 02/01/2020 |

## Two-Year payment history

( Legend )

| Month | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 23 | 23 | 23 | 23 | 23 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 21 | 21 | 21 | 21 | 21 | 21 | 21 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

# EXHIBIT A-2

Three-Bureau Credit Report — July 16, 2025 (Ref. M65173494)

# Three Bureau Credit Report

**Reference #:** M65173494
**Report Date:** 07/16/2025

*i* Below is your personal information as it appears in your credit file. This information includes your legal name, current and previous addresses, employment information and other details.

|  | Transunion | Experian | Equifax |
|---|---|---|---|
| **Credit Report Date:** | 07/16/2025 | 07/16/2025 | 07/16/2025 |
| **Name:** | JASON HENRY ALLEN | JASON ALLEN | JASON HENRY ALLEN |
| **Also Known As:** | - | - | - |
| **Former:** | - | - | - |
| **Date of Birth:** | | | |
| **Current Address(es):** | | | |
| **Previous Address(es):** | | | |
| **Employers:** | | | |

*i* Your Credit Score is a representation of your overall credit health. Most lenders utilize some form of credit scoring to help determine your credit worthiness.

|  | Transunion | Experian | Equifax |
|---|---|---|---|
| **Credit Score:** | 538 | 524 | 520 |
| **Lender Rank:** | Unfavorable | Unfavorable | Unfavorable |
| **Score Scale:** | 300-850 | 300-850 | 300-850 |

**Total of all balances on bankcard or revolving accounts is too high** Bankcard accounts include credit cards and charge cards from a bank and are frequently revolving accounts. Revolving accounts allow you to carry a balance and your monthly payment will vary, based on the amount of your balance. The total combined amount you owe on all of your bankcards and revolving accounts is high, a sign

of increased risk. People who carry balances on multiple bankcards or other revolving accounts have reduced available credit to use if needed, creating a greater chance of becoming overextended.

**The date that you opened your oldest account is too recent** Your oldest account is still too recent. A credit file containing older accounts will have a positive impact on your credit score because it demonstrates that you are experienced managing credit.

**The total of your delinquent or derogatory account balances is too high** The total of the balances is high on your accounts with late payments or on which a lender has reported the account derogatory. Late payments are a proven indicator of risk. When credit line balances approach credit limits, risk is further increased because you don't have much credit available should it be needed, creating a greater chance of becoming overextended.

**Balances on bankcard or revolving accounts too high compared to credit limits** Bankcard accounts include credit cards and charge cards from a bank and are frequently revolving accounts. Revolving accounts allow you to carry a balance and your monthly payment will vary, based on the amount of your balance. You have bankcard or revolving accounts in your credit file with balances that are high compared to the credit limit on the account, which is a proven indicator of increased risk.

Total of all balances on bankcard or revolving accounts is too high
The date that you opened your oldest account is too recent
The total of your delinquent or derogatory account balances is too high
Balances on bankcard or revolving accounts too high compared to credit limits

The score(s) on your IdentityIQ credit report (using the VantageScore® 3.0 model) are provided as a tool to help you understand how lenders may view the data contained in your credit reports and evaluate your credit risk. We provide these scores solely for educational purposes. IdentityIQ does not offer credit; delivery of these scores does not qualify you for any loan. The scoring model your lender uses may be different than the VantageScore® 3.0. As a result, the score and score factors we have delivered may show differences when compared to the score and score factors produced by your lender's scoring model. Please also understand that lenders use multiple sources of information when underwriting a loan and making lending decisions. Credit scores are just one factor that may be used and each lender will have different criteria they consider.

IdentityIQ provides informational materials along with your credit report(s) and score(s) these materials are educational in nature and intended to broaden your understanding of how credit scoring works. They should not be construed as advice in handling your financial problems or making financial decisions. If you are having trouble keeping up with your bill payments or experiencing other financial difficulties, please contact a non-profit credit counseling service for assistance. These materials are for educational purposes only.

ⓘ  Below is an overview of your present and past credit status including open and closed accounts and balance information.

| | | | |
|---|---|---|---|
| **Total Accounts:** | 22 | 24 | 23 |
| **Open Accounts:** | 11 | 11 | 11 |
| **Closed Accounts:** | 11 | 13 | 12 |
| **Delinquent:** | 0 | 0 | 0 |
| **Derogatory:** | 1 | 2 | 2 |
| **Collection:** | 0 | 0 | 0 |
| **Balances:** | $135,019.00 | $154,132.00 | $154,132.00 |
| **Payments:** | $847.00 | $1,421.00 | $872.00 |
| **Public Records:** | 0 | 0 | 0 |
| **Inquiries(2 years):** | 3 | 3 | 5 |

|  | | | |
|---|---|---|---|
| Account #: | 74538**** | 74538**** | 74538**** |
| Account Type: | Installment | Installment | Installment |
| Account Type - Detail: | Auto Loan | Auto Loan | Auto Loan |
| Bureau Code: | Individual | Individual | Individual |
| Account Status: | Derogatory | Derogatory | Derogatory |
| Monthly Payment: | $0.00 | $0.00 | $0.00 |
| Date Opened: | 10/18/2024 | 10/01/2024 | 10/01/2024 |
| Balance: | $84,801.00 | $84,801.00 | $84,801.00 |
| No. of Months (terms): | 72 | 72 | 72 |
| High Credit: | $84,701.00 | $84,701.00 | $84,801.00 |
| Credit Limit: | $0.00 | $0.00 | $0.00 |
| Past Due: | $65,000.00 | $84,801.00 | $84,801.00 |
| Payment Status: | Collection/Chargeoff | Collection/Chargeoff | Collection/Chargeoff |
| Last Reported: | 06/30/2025 | 06/30/2025 | 07/01/2025 |
| Comments: | Charged off as bad debt Profit and loss write-off | Unpaid balance reported as a loss by the credit grantor. | Charged off account Auto |
| Date Last Active: | 06/30/2025 | 06/01/2025 | 12/01/2024 |
| Date of Last Payment: | - | - | 12/01/2024 |

## Two-Year payment history

Legend

| Month | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 25 | 25 | 25 | 25 | 25 | 25 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 23 | 23 | 23 | 23 | 23 | 23 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| **Account #:** | | 5920**** | 5920**** |
| **Account Type:** | | Installment | Installment |
| **Account Type - Detail:** | | Auto Loan | Auto Loan |
| **Bureau Code:** | | Individual | Individual |
| **Account Status:** | | Derogatory | Derogatory |
| **Monthly Payment:** | | $0.00 | $0.00 |
| **Date Opened:** | | 07/01/2020 | 07/01/2020 |
| **Balance:** | | $18,906.00 | $18,906.00 |
| **No. of Months (terms):** | | 74 | 0 |
| **High Credit:** | | $64,656.00 | $18,906.00 |
| **Credit Limit:** | | $0.00 | $0.00 |
| **Past Due:** | | $18,906.00 | $18,906.00 |
| **Payment Status:** | | Collection/Chargeoff | Collection/Chargeoff |
| **Last Reported:** | | 07/01/2025 | 07/01/2025 |
| **Comments:** | | Unpaid balance reported as a loss by the credit grantor. | Charged off account Auto |
| **Date Last Active:** | | 06/01/2025 | 01/01/2025 |
| **Date of Last Payment:** | | 02/20/2025 | 01/01/2025 |

## Two-Year payment history

Legend

| Month | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 23 | 23 | 23 | 23 | 23 |
| TransUnion | | | | | | | | | | | | | | | | | | | | | | | | |
| Experian | | | | | | | | | | | | | | | | | | | | | | | | |
| Equifax | | | | | | | | | | | | | | | | | | | | | | | | |

# EXHIBIT B-1

Experian Dispute Result — ICCU "Remains" — January 28, 2025

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results



### IDAHO CENTRAL CR UN

Account • 74538XXXX

The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details.

Remains

### NCCINC/PARKER TOYOTA SCI

Inquiry Date: 10/04/2024

This item was removed from your credit report.

Deleted

### POTLATCH NO 1 FIN CU

Inquiry Date: 10/04/2024

This item was removed from your credit report.

Deleted

## TOYOTA MOTOR CREDIT CORP

Inquiry Date: 10/07/2024

This item was removed from your credit report.



Deleted

## TOYOTA MOTOR CREDIT CORP

Inquiry Date: 10/04/2024

This item was removed from your credit report.



Deleted

## If the reinvestigation does not resolve your dispute, you have the right to add a statement of up to 100 words to your file disputing the accuracy or completeness of the information.



→ If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you.

→ You have a right to contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly.

→ You have a right to provide us additional information or documents about your dispute. Experian's online Dispute Center lets you easily add any pertinent documentation to a dispute. You can add documentation online when logged in on your computer or via a mobile device. You may also mail your information to Experian, P.O. Box 9701, Allen, Texas, 75013.

→ You have a right to file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office. You may submit a complaint to the Consumer Financial Protection Bureau at www.consumerfinance.gov/complaint or by mail at Consumer Financial Protection Bureau, PO Box 4503, Iowa City, IA 52244.

**If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement,** you have a right to request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland, or New York.) If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address. In the event an organization is not specifically designated, we will generally default to sending only to companies that have requested your credit information as a result of an action you took, such as applying for credit, insurance, employment, or apartment rental.

**If interested, you have a right to also request a description of how the reinvestigation was conducted** along with the business name, address, and telephone number (if reasonably available) of the furnisher of information.

**Thank you for helping ensure the accuracy of your credit information.** For frequently asked questions about your credit report, please visit experian.com/consumerfaqs. If no information follows, our response appeared on the previous page.

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e. "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

## Action Required

**IDAHO CENTRAL CR UN**
74538....

IF ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT, THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO DISCUSS THIS MATTER. THE CREDIT GRANTOR REQUESTS THAT YOU CONTACT THEM DIRECTLY



## Notices

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

**Remedying the Effects of Identity Theft**

You are receiving this information because you have notified a consumer reporting agency that you believe that you are a victim of identity theft. Identity theft occurs when someone uses your name, Social Security number, date of birth, or other identifying information, without authority, to commit fraud. For example, someone may have committed identity theft by using your personal information to open a credit card account or get a loan in your name. **For more information, visit www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.**

The Fair Credit Reporting Act (FCRA) gives you specific rights when you are, or believe that you are, the victim of identity theft. Here is a brief summary of the rights designed to help you recover from identity theft.

**1. You have the right to ask that nationwide consumer reporting agencies place "fraud alerts" in your file to let potential creditors and others know that you may be a victim of identity theft.** A fraud alert can make it more difficult for someone to get credit in your name because it tells creditors to follow certain procedures to protect you. It also may delay your ability to obtain credit. You may place

soon as that agency processes your fraud alert, it will notify the other two, which then also must place fraud alerts in your file.

- Experian: 1 888 397 3742; www.experian.com
- Equifax: 1 800 525 6285; www.equifax.com
- TransUnion: 1 800 680 7289; www.transunion.com

An initial fraud alert stays in your file for at least one year. An extended alert stays in your file for seven years. To place either of these alerts, a consumer reporting agency will require you to provide appropriate proof of your identity, which may include your Social Security number. If you ask for an extended alert, you will have to provide an identity theft report. An identity theft report includes a copy of a report you have filed with a federal, state, or local law enforcement agency, and additional information a consumer reporting agency may require you to submit. For more detailed information about the identity theft report, visit www.consumerfinance.gov/learnmore.

**2. You have the right to free copies of the information in your file (your "file disclosure").** An initial fraud alert entitles you to a copy of all the information in your file at each of the three nationwide agencies, and an extended alert entitles you to two free file disclosures in a 12-month period following the placing of the alert. These additional disclosures may help you detect signs of fraud, for example, whether fraudulent accounts have been opened in your name or whether someone has reported a change in your address. Once a year, you also have the right to a free copy of the information in your file at any consumer reporting agency, if you believe it has inaccurate information due to fraud, such as identity theft. You also have the ability to obtain additional free file disclosures under other provisions of the FCRA. See www.consumerfinance.gov/learnmore.

**3. You have the right to obtain documents relating to fraudulent transactions made or accounts opened using your personal information.** A creditor or other business must give you copies of applications and other business records relating to transactions and accounts that resulted from the theft of your identity, if you ask for them in writing. A business may ask you for proof of your identity, a police report, and an affidavit before giving you the documents. It also may specify an address for you to send your request. Under certain circumstances, a business can refuse to provide you with these documents. See www.consumerfinance.gov/learnmore.

**4. You have the right to obtain information from a debt collector.** If you ask, a debt collector must provide you with certain information about the debt you believe was incurred in your name by an identity thief – like the name of the creditor and the amount of the debt.

**5. If you believe information in your file results from identity theft, you have the right to ask that a consumer reporting agency block that information from your file.** An identity thief may run up bills in your name and not pay them. Information about the unpaid bills may appear on your consumer report. Should you decide to ask a consumer reporting agency to block the reporting of this information, you must identify the information to block, and provide the consumer reporting agency with proof of your identity and a copy of your identity theft report. The consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation, or where the block results from an error or a material misrepresentation of fact made by you. If the agency declines or rescinds the block, it must notify you. Once a debt resulting from identity theft has been blocked, a person or business with notice of the block may not sell, transfer, or place the debt for collection.

**6. You also may prevent businesses from reporting information about you to consumer reporting agencies if you believe the information is a result of identity theft.** To do so, you must send your request to the address specified by the business that reports the information to the consumer reporting agency. The business will expect you to identify what information you do not want reported and to provide an identity theft report.

**7. CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE.** You have a right to place a security freeze on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To learn more about identity theft and how to deal with its consequences, visit www.consumerfinance.gov/learnmore, or write to the Consumer Financial Protection Bureau. You may have additional rights under state law. For more information, contact your local consumer protection agency or your state attorney general.

In addition to the new rights and procedures to help consumers deal with the effects of identity theft, the FCRA has many other important consumer protections. They are described in more detail at www.consumerfinance.gov/learnmore.

If you believe you are a victim of fraud, you may want to contact your local law enforcement agency to make an identity theft report. The identity theft report should include as many of the following elements as possible: specific dates such as when the loss or theft of personal information occurred or when the fraud(s) occurred; how you discovered or learned of the theft; any known information about the perpetrator; the names of creditors and account numbers involved in the theft; name and/or badge number of the law enforcement personnel who processed the report; the filing date and case number. You may find the following suggestions helpful:

- *Protect Yourself* First, make sure an Initial Security Alert or Extended Fraud Victim Alert is on file with all nationwide consumer credit reporting agencies. If you request an alert with us, we will share your request with the other nationwide consumer credit reporting agencies, Equifax and TransUnion.
- *Inform the Sources* Contact each source of information, including creditors and public record

- *Document all Contacts* Make notes of everyone you spoke with; ask for names, department names, phone extensions; record the date you spoke to them.
- *Understand the Process* Each creditor may have a different process for handling a fraud claim. Make sure you understand exactly what is expected from you, and then ask what you can expect from the creditor. **At the conclusion of a dispute, ask the creditor for a document that states you are not responsible for the debt** .
- *Follow Up* Make sure everything the creditor or credit reporting agency has requested is received. It is always a good idea to place a follow up call or send a letter for confirmation.
- *Review Reports Regularly* We suggest that you routinely request new copies of your personal credit report to review.
- *Don't Throw Away Files* Keep all notes and correspondence in an accessible file in case they are needed in the future.

Some of the information contained in your consumer disclosure may have been obtained from another consumer reporting agency, Clarity Services Inc. a part of Experian. Information may be reflected differently, and additional information may be available. To view all information maintained by Clarity Services Inc., a part of Experian, at no charge to you, please call (866) 390-3118 or submit your request by mail to PO Box 16, Allen, TX, 75013. You may also access your Clarity Credit Report and Clarity Credit Score by visiting https://consumers.clarityservices.com/reports.

## Know Your Rights

# Fair Credit Reporting Act (FCRA)

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

## A Summary of Your Rights Under the Fair Credit Reporting Act.

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.**

**You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment — or to take another adverse action against you — must tell you, and must give you the name, address, and phone number of the agency that provided the information.

**You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

- a person has taken adverse action against you because of information in your credit report;
- you are the victim of identity theft and place a fraud alert in your file;
- your file contains inaccurate information as a result of fraud;
- you are on public assistance;
- you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

**You have the right to ask for a credit score.** Credit scores are numerical summaries of your creditworthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

**You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

**Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

**Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

**Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need — usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

**You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

**You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1 888 5OPTOUT (1 888 567 8688).

**You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

**Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

Consumers Have The Right To Obtain A Security Freeze

You have a right to place a 'security freeze' on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For more information about your federal rights, contact:**

| FOR QUESTIONS OR CONCERNS REGARDING: | PLEASE CONTACT: |
|---|---|
| **1.a.** Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | **a.** Bureau of Consumer Financial Protection 1700 G Street NW Washington, DC 20552 |
| **b.** Such affiliates that are not banks, savings associations, or credit unions also should list in addition to the Bureau: | **b.** Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue NW Washington, DC 20580 |
| **2.** To the extent not included in item 1 above: | **a.** Office of the Comptroller of the Currency Customer Assistance Group P.O. Box 53570 Houston, TX 77052 |
| **a.** National banks, federal savings associations, and federal branches and federal agencies of foreign banks | |
| **b.** State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, | **b.** Federal Reserve Consumer Help Center PO Box 1200 |

and organizations operating under section 25 or 25A of the Federal Reserve Act

**c.** Nonmember Insured banks, Insured State Branches of Foreign Banks, and insured state savings associations

**d.** Federal Credit Unions

**c.** Division of Depositor and Consumer Protection
National Center for Consumer and Depositor Assistance
Federal Deposit Insurance Corporation
1100 Walnut Street, Box #11
Kansas City, MO 64106

**d.** National Credit Union Administration
Office of Consumer Financial Protection
1775 Duke Street
Alexandria, VA 22314

**3.** Air carriers

Assistant General Counsel for Office of Aviation Consumer Protection
Department of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590

**4.** Creditors Subject to Surface Transportation Board

Office of Public Assistance, Governmental Affairs, and Compliance
Surface Transportation Board
395 E Street SW
Washington, DC 20423

**5.** Creditors Subject to Packers and Stockyards Act

Nearest Packers and Stockyards Division Regional Office

**6.** Small Business Investment Companies

Associate Administrator, Office of Capital Access
United States Small Business Administration
409 Third Street SW, Suite 8200
Washington, DC 20416

**7.** Brokers and Dealers

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

**8.** Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations

Farm Credit Administration
1501 Farm Credit Drive
McLean, VA 22102-5090



**9.** Retailers, Finance Companies, and All Other Creditors Not Listed Above

FTC Regional Office for region in which the creditor operates **or** Federal Trade Commission: Consumer Response Center - FCRA
Washington, DC 20580
(877) 382-4357

## Notification of Rights

- <u>Notification of Rights for California Consumers</u>
- <u>Notification of Rights for Colorado Consumers</u>
- <u>Notification of Rights for Connecticut Consumers</u>
- <u>Notification of Rights for Maryland Consumers</u>
- <u>Notification of Rights for Massachusetts Consumers</u>
- <u>Notification of Rights for Texas Consumers</u>
- <u>Notification of Rights for Vermont Consumers</u>
- <u>Notification of Rights for Washington Consumers</u>

# EXHIBIT B-2

Experian Dispute Result — ICCU "Remains" — June 11, 2025

**Personal & Confidential**

Date Generated  Jun 11, 2025

Report Number  4061-1823-68

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results



### IDAHO CENTRAL CR UN

Account • 74538XXXX

The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details.

Remains

### FORD MOTOR CREDIT CO

Inquiry Date: 02/18/2025

This item was removed from your credit report.

Deleted

## If the reinvestigation does not resolve your dispute, you have the right to add a statement of up to 100 words to your file disputing the accuracy or completeness of the information.

 If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you.

→ You have a right to contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly.

→ You have a right to provide us additional information or documents about your dispute. Experian's online Dispute Center lets you easily add any pertinent documentation to a dispute. You can add documentation online when logged in on your computer or via a mobile device. You may also mail your information to Experian, P.O. Box 9701, Allen, Texas, 75013.

→ You have a right to file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office. You may submit a complaint to the Consumer Financial Protection Bureau at www.consumerfinance.gov/complaint or by mail at Consumer Financial Protection Bureau, PO Box 4503, Iowa City, IA 52244.

**If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement,** you have a right to request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland, or New York.) If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address. In the event an organization is not specifically designated, we will generally default to sending only to companies that have requested your credit information as a result of an action you took, such as applying for credit, insurance, employment, or apartment rental.

**If interested, you have a right to also request a description of how the reinvestigation was conducted** along with the business name, address, and telephone number (if reasonably available) of the furnisher of information.

**Thank you for helping ensure the accuracy of your credit information.** For frequently asked questions about your credit report, please visit experian.com/consumerfaqs. If no information follows, our response appeared on the previous page.

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e. "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

## Action Required

**IDAHO CENTRAL CR UN**
74538....

IF ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT, THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO DISCUSS THIS MATTER. THE CREDIT GRANTOR REQUESTS THAT YOU CONTACT THEM DIRECTLY

# Notices

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

**Remedying the Effects of Identity Theft**

You are receiving this information because you have notified a consumer reporting agency that you believe that you are a victim of identity theft. Identity theft occurs when someone uses your name, Social Security number, date of birth, or other identifying information, without authority, to commit fraud. For example, someone may have committed identity theft by using your personal information to open a credit card account or get a loan in your name. **For more information, visit www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.**

The Fair Credit Reporting Act (FCRA) gives you specific rights when you are, or believe that you are, the victim of identity theft. Here is a brief summary of the rights designed to help you recover from identity theft.

**1. You have the right to ask that nationwide consumer reporting agencies place "fraud alerts" in your file to let potential creditors and others know that you may be a victim of identity theft.** A fraud alert can make it more difficult for someone to get credit in your name because it tells creditors to follow certain procedures to protect you. It also may delay your ability to obtain credit. You may place a fraud alert in your file by calling just one of the three nationwide consumer reporting agencies. As soon as that agency processes your fraud alert, it will notify the other two, which then also must place fraud alerts in your file.

- Experian: 1 888 397 3742; www.experian.com
- Equifax: 1 800 525 6285; www.equifax.com
- TransUnion: 1 800 680 7289; www.transunion.com

An initial fraud alert stays in your file for at least one year. An extended alert stays in your file for seven years. To place either of these alerts, a consumer reporting agency will require you to provide appropriate proof of your identity, which may include your Social Security number. If you ask for an extended alert, you will have to provide an identity theft report. An identity theft report includes a copy of a report you have filed with a federal, state, or local law enforcement agency, and additional information a consumer reporting agency may require you to submit. For more detailed information about the identity theft report, visit www.consumerfinance.gov/learnmore.

**2. You have the right to free copies of the information in your file (your "file disclosure").** An initial fraud alert entitles you to a copy of all the information in your file at each of the three nationwide agencies, and an extended alert entitles you to two free file disclosures in a 12-month period following the placing of the alert. These additional disclosures may help you detect signs of fraud, for example, whether fraudulent accounts have been opened in your name or whether someone has reported a change in your address. Once a year, you also have the right to a free copy of the information in your file at any consumer reporting agency, if you believe it has inaccurate information due to fraud, such as identity theft. You also have the ability to obtain additional free file disclosures under other provisions of the FCRA. See www.consumerfinance.gov/learnmore.

**3. You have the right to obtain documents relating to fraudulent transactions made or accounts**

applications and other business records relating to transactions and accounts that resulted from the theft of your identity, if you ask for them in writing. A business may ask you for proof of your identity, a police report, and an affidavit before giving you the documents. It also may specify an address for you to send your request. Under certain circumstances, a business can refuse to provide you with these documents. See www.consumerfinance.gov/learnmore.

**4. You have the right to obtain information from a debt collector.** If you ask, a debt collector must provide you with certain information about the debt you believe was incurred in your name by an identity thief − like the name of the creditor and the amount of the debt.

**5. If you believe information in your file results from identity theft, you have the right to ask that a consumer reporting agency block that information from your file.** An identity thief may run up bills in your name and not pay them. Information about the unpaid bills may appear on your consumer report. Should you decide to ask a consumer reporting agency to block the reporting of this information, you must identify the information to block, and provide the consumer reporting agency with proof of your identity and a copy of your identity theft report. The consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation, or where the block results from an error or a material misrepresentation of fact made by you. If the agency declines or rescinds the block, it must notify you. Once a debt resulting from identity theft has been blocked, a person or business with notice of the block may not sell, transfer, or place the debt for collection.

**6. You also may prevent businesses from reporting information about you to consumer reporting agencies if you believe the information is a result of identity theft.** To do so, you must send your request to the address specified by the business that reports the information to the consumer reporting agency. The business will expect you to identify what information you do not want reported and to provide an identity theft report.

**7. CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE.** You have a right to place a security freeze on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To learn more about identity theft and how to deal with its consequences, visit www.consumerfinance.gov/learnmore, or write to the Consumer Financial Protection Bureau. You may have additional rights under state law. For more information, contact your local consumer protection agency or your state attorney general.

In addition to the new rights and procedures to help consumers deal with the effects of identity theft, the FCRA has many other important consumer protections. They are described in more detail at www.consumerfinance.gov/learnmore.

Some of the information contained in your consumer disclosure may have been obtained from another consumer reporting agency, Clarity Services Inc. a part of Experian. Information may be reflected differently, and additional information may be available. To view all information maintained by Clarity Services Inc., a part of Experian, at no charge to you, please call (866) 390-3118 or submit your request by mail to PO Box 16, Allen, TX, 75013. You may also access your Clarity Credit Report and Clarity Credit Score by visiting https://consumers.clarityservices.com/reports.

## Know Your Rights

# Fair Credit Reporting Act (FCRA)



*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act.

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.**

**You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment — or to take another adverse action against you — must tell you, and must give you the name, address, and phone number of the agency that provided the information.

**You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

- a person has taken adverse action against you because of information in your credit report;
- you are the victim of identity theft and place a fraud alert in your file;
- your file contains inaccurate information as a result of fraud;
- you are on public assistance;

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

**You have the right to ask for a credit score.** Credit scores are numerical summaries of your creditworthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

**You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

**Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

**Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

**Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need — usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

**You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

**You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1 888 5OPTOUT (1 888 567 8688).

**You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

**Identity theft victims and active duty military personnel have additional rights.** For more Information, visit www.consumerfinance.gov/learnmore.

Consumers Have The Right To Obtain A Security Freeze

You have a right to place a 'security freeze' on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may

delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For more information about your federal rights, contact:**

| FOR QUESTIONS OR CONCERNS REGARDING: | PLEASE CONTACT: |
|---|---|
| **1.a.** Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | **a.** Bureau of Consumer Financial Protection 1700 G Street NW Washington, DC 20552 |
| **b.** Such affiliates that are not banks, savings associations, or credit unions also should list in addition to the Bureau: | **b.** Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue NW Washington, DC 20580 |
| **2.** To the extent not included in item 1 above: | **a.** Office of the Comptroller of the Currency Customer Assistance Group P.O. Box 53570 Houston, TX 77052 |
| **a.** National banks, federal savings associations, and federal branches and federal agencies of foreign banks | |
| **b.** State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | **b.** Federal Reserve Consumer Help Center PO Box 1200 Minneapolis, MN 55480 |
| **c.** Nonmember Insured banks, Insured State Branches of Foreign Banks, and insured state savings associations | **c.** Division of Depositor and Consumer Protection National Center for Consumer |



| | |
|---|---|
| **d.** Federal Credit Unions | Federal Deposit Insurance Corporation 1100 Walnut Street, Box #11 Kansas City, MO 64106 |
| | **d.** National Credit Union Administration Office of Consumer Financial Protection 1775 Duke Street Alexandria, VA 22314 |
| **3.** Air carriers | Assistant General Counsel for Office of Aviation Consumer Protection Department of Transportation 1200 New Jersey Avenue SE Washington, DC 20590 |



| | |
|---|---|
| **4.** Creditors Subject to Surface Transportation Board | Office of Public Assistance, Governmental Affairs, and Compliance Surface Transportation Board 395 E Street SW Washington, DC 20423 |
| **5.** Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Division Regional Office |
| **6.** Small Business Investment Companies | Associate Administrator, Office of Capital Access United States Small Business Administration 409 Third Street SW, Suite 8200 Washington, DC 20416 |
| **7.** Brokers and Dealers | Securities and Exchange Commission ... |

**8.** Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations

Farm Credit Administration
1501 Farm Credit Drive
McLean, VA 22102-5090

**9.** Retailers, Finance Companies, and All Other Creditors Not Listed Above

FTC Regional Office for region in which the creditor operates **or** Federal Trade Commission: Consumer Response Center - FCRA
Washington, DC 20580
(877) 382-4357



## Notification of Rights

- <u>Notification of Rights for California Consumers</u>
- <u>Notification of Rights for Colorado Consumers</u>
- <u>Notification of Rights for Connecticut Consumers</u>
- <u>Notification of Rights for Maryland Consumers</u>
- <u>Notification of Rights for Massachusetts Consumers</u>
- <u>Notification of Rights for Texas Consumers</u>
- <u>Notification of Rights for Vermont Consumers</u>
- <u>Notification of Rights for Washington Consumers</u>

# EXHIBIT B-6

Equifax Dispute Result — ICCU Auto Loan

July 15, 2025 (Confirmation No. 5189578121)

Equifax reinvestigation verifying the charged-off

ICCU tradeline as reported (Acct *4317 = #74538).

# EQUIFAX

## CREDIT FILE : July 15, 2025
## Confirmation # 5189578121

P.O. Box 105518
Atlanta, GA 30348

000003864- DISC
JASON HENRY ALLEN
2600 E SELTICE WAY # 235
POST FALLS, ID 83854-7991

Dear JASON HENRY ALLEN:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete. Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

**What should I do if I do not agree with the results of the investigation?**

You have a few options:

- You may add a statement of up to 100 words (200 words for Maine residents) to your credit report. If you provide a consumer statement that contains

(End of Report)
000003864 DISC

5189578121-PKP-0f090176000002a7-07152025

**What else should I know?**

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at equifax.com/personal/help/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

**How should I read my dispute results?**

To better assist you with understanding the results of your dispute, please review the information below:

- If an item states **"Deleted"**, we have removed it from your credit report and taken steps so it does not reappear.
- If an item states **"Verified as Reported"**, the reporting company has certifed it is reporting accurately.
- If an item states **"Updated"**, we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

| The Results Of Our Reinvestigation |
| --- |

| Credit Account Information |
| --- |
| (For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors) |

| Account History Status Code Descriptions | 1 : 30-59 Days Past Due<br>2 : 60-89 Days Past Due<br>3 : 90-119 Days Past Due<br>4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due<br>6 : 180 or More Days Past Due<br>G : Collection Account<br>H : Foreclosure | J : Voluntary Surrender<br>K : Repossession<br>L : Charge Off |
| --- | --- | --- | --- |

>>> *We have researched the credit account. Account # - *4317 The results are:* WE VERIFIED THAT THIS ITEM BELONGS TO YOU. WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION

**HIGH CREDIT *DATE OF MAJOR DELINQUENCY 1ST REPORTED *HISTORICAL ACCOUNT INFORMATION.** If you have additional questions about this item please contact: **IDAHO CNRL, PO Box 2469, Pocatello, ID 83206-2469 Phone: (208) 233-3300**

### IDAHO CENTRAL CU    PO Box 2469 Pocatello ID 832062469 : 2082333300

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| *4317 | 10/18/2024 | $84,801 | | 72 Months | Monthly | 7 | | |

| Date of Last Reported Update | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/15/2025 | $84,801 | $84,801 | | | | 12/31/2024 | | | $84,801 | | | | |

| Status | Type of Account | Type of Loan | Whose Account | Portfolio Indicator | Portfolio Status |
|---|---|---|---|---|---|
| Charge Off | Installment | Auto | Individual Account | | |

ADDITIONAL INFORMATION:
*Charged Off Account*

*Auto*

*Fixed Rate*

---

Account History with Status Codes

| | 05/2025 5 | 04/2025 4 | 03/2025 3 | 02/2025 2 | 01/2025 1 | 12/2024 0 | 11/2024 0 |
|---|---|---|---|---|---|---|---|

Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 06/25 | $84,801 | | | | $84,701 | | $84,801 | Auto | |

ADDITIONAL INFORMATION:
*Consumer Disputes - Reinvestigation in Process*

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 05/25 | $84,801 | $1,427 | | | $84,701 | | $7,136 | Auto | |

ADDITIONAL INFORMATION:
Auto
150 Days Past Due
Fixed Rate

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 04/25 | $84,801 | $1,427 | | | $84,701 | | $5,709 | Auto | |

ADDITIONAL INFORMATION:
Auto
120 Days Past Due
Fixed Rate

# EXHIBIT B-3

Experian Dispute Result - Ford Motor Credit Co.

June 12, 2025 (Report No. 3659-5888-14)

*Reinvestigation stating the account's original amount was $64,656.*

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results



### FORD MOTOR CREDIT COMP

Account • 5920XXXX

The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details.

Updated

You can contact FORD MOTOR CREDIT COMP at PO BOX 542000, OMAHA , NE 68154 or (800) 727-7000

 **After your dispute**

 **Account Info**

| Account Name | FORD MOTOR CREDIT | Balance | $18,906 |
|---|---|---|---|
| Account Number | 5920XXXX | Balance Updated | 06/12/2025 |
| Account Type | Auto Loan | Recent Payment | - |
| Responsibility | Individual | Monthly Payment | - |
| Date Opened | 07/02/2020 | Original Balance | $64,656 |
| Status | Account charged off. $18,906 written off. $18,906 past due as of Jun 2025. | Highest Balance | - |
| | | Terms | 74 Months |

## $ Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | 30 | ND | ND | ND | ND | CO | — | — | — | — | — | — |
| 2024 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ND | ND | ✓ |
| 2023 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2022 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | — | — | — | — | — | — | — | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | |
|---|---|---|---|
| ✓ | Current / Terms met | 30 | Past due 30 days |
| CO | Charge off | ND | No data for this period |

### Payment history guide

Charge Off as of Jun 2025

30 days past due as of Jan 2025

This account is scheduled to continue on record until Sep 2031.



## Balance Histories

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Jan 2025 | $19,825 | $898 | $0 on 9/13/2024 |
| Dec 2024 | $19,781 | $898 | $0 on 9/13/2024 |
| Oct 2024 | $0 | $0 | $0 on 10/18/2024 |
| Oct 2024 | $19,756 | $898 | $0 on 9/13/2024 |
| Sep 2024 | $19,756 | $898 | $898 on 9/13/2024 |
| Aug 2024 | $20,654 | $898 | $898 on 8/16/2024 |
| Jul 2024 | $21,552 | $898 | $898 on 7/11/2024 |
| Jun 2024 | $22,450 | $898 | $898 on 6/16/2024 |
| May 2024 | $23,348 | $898 | $898 on 5/16/2024 |
| Apr 2024 | $24,246 | $898 | $898 on 4/16/2024 |
| Mar 2024 | $25,144 | $898 | $898 on 3/16/2024 |
| Feb 2024 | $26.042 | $898 | $898 on 2/16/2024 |

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| Dec 2023 | $27,838 | $898 | $898 on 12/16/2023 |
| Nov 2023 | $28,736 | $898 | $0 on 11/16/2023 |
| Oct 2023 | $29,634 | $898 | $898 on 10/16/2023 |
| Sep 2023 | $30,532 | $898 | $898 on 9/16/2023 |
| Aug 2023 | $31,430 | $898 | $898 on 8/16/2023 |
| Jul 2023 | $32,328 | $898 | $898 on 7/16/2023 |
| Jun 2023 | $33,226 | $898 | $898 on 6/16/2023 |

## Additional info

The original amount of this account was $64,656

 ## Contact Info

| Address | PO BOX 542000, OMAHA NE 68154 |
|---------|-------------------------------|

 ## Reinvestigation Info

This item was updated from our processing of your dispute in Jun 2025.

 # Before your dispute

 ## Account Info

| | | | |
|---|---|---|---|
| Account Name | FORD MOTOR CREDIT | Balance | $19,870 |
| Account Number | 5920XXXX | Balance Updated | 02/17/2025 |
| Account Type | Auto Loan | Recent Payment | - |
| Responsibility | Individual | Monthly Payment | $898 |
| Date Opened | 07/02/2020 | Original Balance | $64,656 |
| Status | Open. $1,796 past due as of Feb 2025. | Highest Balance | - |
| | | Terms | 74 Months |
| Status Updated | 02/2025 | | |

## Payment History

|  | J | F | M | A | M | J | J | A | S | O | N | D |
|--|---|---|---|---|---|---|---|---|---|---|---|---|

# EXHIBIT B-4

Experian Dispute Result - Ford Motor Credit Co.

June 30, 2025  (Report No. 2083-8921-02)

*Reinvestigation stating the account's original amount was $64,656.*

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results

### FORD MOTOR CREDIT COMP

Account • 5920XXXX

The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details.

**Updated**

You can contact FORD MOTOR CREDIT COMP at PO BOX 542000, OMAHA , NE 68154 or (800) 727-7000

### After your dispute

 **Account Info**

| Account Name | FORD MOTOR CREDIT | Balance | $18,906 |
|---|---|---|---|
| Account Number | 5920XXXX | Balance Updated | 06/30/2025 |
| Account Type | Auto Loan | Recent Payment | - |
| Responsibility | Individual | Monthly Payment | - |
| Date Opened | 07/02/2020 | Original Balance | $64,656 |
| Status | Account charged off. $18,906 written off. $18,906 past due as of Jun 2025. | Highest Balance | - |
| | | Terms | 74 Months |
| | | On Record Until | Sep 2031 |
| Status Updated | 06/2025 | | |

## Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | **30** | ND | ND | ND | ND | CO | — | — | — | — | — | — |
| 2024 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ND | ND | ✓ |
| 2023 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2022 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | — | — | — | — | — | — | — | ✓ | ✓ | ✓ | ✓ | ✓ |

✓   Current / Terms met     30   Past due 30 days

CO   Charge off     ND   No data for this period

### Payment history guide

Charge Off as of Jun 2025

30 days past due as of Jan 2025

This account is scheduled to continue on record until Sep 2031.



## Balance Histories

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Jan 2025 | $19,825 | $898 | $0 on 9/13/2024 |
| Dec 2024 | $19,781 | $898 | $0 on 9/13/2024 |
| Oct 2024 | $0 | $0 | $0 on 10/18/2024 |
| Oct 2024 | $19,756 | $898 | $0 on 9/13/2024 |
| Sep 2024 | $19,756 | $898 | $898 on 9/13/2024 |
| Aug 2024 | $20,654 | $898 | $898 on 8/16/2024 |
| Jul 2024 | $21,552 | $898 | $898 on 7/11/2024 |
| Jun 2024 | $22,450 | $898 | $898 on 6/16/2024 |
| May 2024 | $23,348 | $898 | $898 on 5/16/2024 |
| Apr 2024 | $24,246 | $898 | $898 on 4/16/2024 |
| Mar 2024 | $25,144 | $898 | $898 on 3/16/2024 |
| Feb 2024 | $26.042 | $898 | $898 on 2/16/2024 |

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| Dec 2023 | $27,838 | $898 | $898 on 12/16/2023 |
| Nov 2023 | $28,736 | $898 | $0 on 11/16/2023 |
| Oct 2023 | $29,634 | $898 | $898 on 10/16/2023 |
| Sep 2023 | $30,532 | $898 | $898 on 9/16/2023 |
| Aug 2023 | $31,430 | $898 | $898 on 8/16/2023 |
| Jul 2023 | $32,328 | $898 | $898 on 7/16/2023 |
| Jun 2023 | $33,226 | $898 | $898 on 6/16/2023 |

## Additional info

The original amount of this account was $64,656



## Contact Info

| Address | PO BOX 542000, OMAHA NE 68154 |
|---------|-------------------------------|



## Reinvestigation Info

This item was updated from our processing of your dispute in Jun 2025.



# Before your dispute



## Account Info

| | | | |
|---|---|---|---|
| Account Name | FORD MOTOR CREDIT | Balance | $18,906 |
| Account Number | 5920XXXX | Balance Updated | 06/12/2025 |
| Account Type | Auto Loan | Recent Payment | - |
| Responsibility | Individual | Monthly Payment | - |
| Date Opened | 07/02/2020 | Original Balance | $64,656 |
| Status | Account charged off. $18,906 written off. $18,906 past due as of Jun 2025. | Highest Balance | - |
| | | Terms | 74 Months |
| Status Updated | 06/2025 | On Record Until | Sep 2031 |

## Payment History

# EXHIBIT B-5

Experian Dispute Result - Ford Motor Credit Co.

January 28, 2025 (Report No. 3448-2796-94)

*Plaintiff's first Experian dispute of the Ford account.*

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results

### FORD MOTOR CREDIT COMP

Account · 5920XXXX

The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated. Please review your report for the details.



Verified and Updated

## If the reinvestigation does not resolve your dispute, you have the right to add a statement of up to 100 words to your file disputing the accuracy or completeness of the information.

→ If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you.

→ You have a right to contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly.

→ You have a right to provide us additional information or documents about your dispute.

→ You have a right to file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office. You may submit a complaint to the Consumer Financial Protection Bureau at www.consumerfinance.gov/complaint or by mail at Consumer Financial Protection Bureau, PO Box 4503, Iowa City, IA 52244.

**If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement,** you have a right to request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland, or New York.) If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address. In the event an organization is not specifically designated, we will generally default to sending only to companies that have requested your credit information as a result of an action you took, such as applying for credit, insurance, employment, or apartment rental.

**If interested, you have a right to also request a description of how the reinvestigation was conducted** along with the business name, address, and telephone number (if reasonably available) of the furnisher of information.

**Thank you for helping ensure the accuracy of your credit information.** For frequently asked questions about your credit report, please visit experian.com/consumerfaqs. If no information follows, our response appeared on the previous page.

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e. "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

## Action Required

**FORD MOTOR CREDIT**
5920....

IF ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT, THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO DISCUSS THIS MATTER. THE CREDIT GRANTOR REQUESTS THAT YOU CONTACT THEM DIRECTLY

## Notices

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

**Remedying the Effects of Identity Theft**

You are receiving this info....

# EXHIBIT B-7

Equifax Dispute Result — Ford Motor Credit Co.
June 12, 2025 (Confirmation No. 5157602968)

Equifax reinvestigation retaining the $18,906
High Credit (Acct *3837 = #5920).

# EQUIFAX

## CREDIT FILE : June 12, 2025

## Confirmation # 5157602968

Dear JASON HENRY ALLEN:

P.O. Box 105518
Atlanta, GA 30348

000010506- DISC
JASON HENRY ALLEN
2600 E SELTICE WAY # 235
POST FALLS, ID 83854-7991

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete. Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

**What should I do if I do not agree with the results of the investigation?**

You have a few options:

- You may add a statement of up to 100 words (200 words for Maine residents) to your credit report. If you provide a consumer statement that contains

(End of Report)
000010506 DISC

5157602968-PGX-0ee8013700000494-06122025

**What else should I know?**

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at equifax.com/personal/help/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

**How should I read my dispute results?**

To better assist you with understanding the results of your dispute, please review the information below:

- If an item states **"Deleted"**, we have removed it from your credit report and taken steps so it does not reappear.
- If an item states **"Verified as Reported"**, the reporting company has certifed it is reporting accurately.
- If an item states **"Updated"**, we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

| The Results Of Our Reinvestigation |
|---|

| Credit Account Information | | | |
|---|---|---|---|
| (For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors) | | | |
| **Account History Status Code Descriptions** | 1 : 30-59 Days Past Due<br>2 : 60-89 Days Past Due<br>3 : 90-119 Days Past Due<br>4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due<br>6 : 180 or More Days Past Due<br>G : Collection Account<br>H : Foreclosure | J : Voluntary Surrender<br>K : Repossession<br>L : Charge Off |

>>> *Information on your report has been updated. Account # - *3837 The results are:* WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THIS ACCOUNT HAS BEEN UPDATED. ADDITIONAL INFORMATION HAS BEEN PROVIDED FROM THE ORIGINAL SOURCE REGARDING THIS ITEM.

THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *TERMS DURATION *TERMS FREQUENCY *HIGH CREDIT *DATE OF MAJOR DELINQUENCY 1ST REPORTED *HISTORICAL ACCOUNT INFORMATION.   If you have additional questions about this item please contact: **FORD MOTOR CREDIT CO., PO BOX 35910, CLEVELAND, OH 44135 Phone: (800) 727-7000**

**FORD MOTOR CREDIT CO.**     PO BOX 35910 CLEVELAND OH 44135 : 8007277000

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| *3837 | 07/02/2020 | $18,906 | | 74 Months | Monthly | 57 | | |

| Date of Last Reported Update | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/12/2025 | $18,906 | $18,906 | 02/20/2025 | | | 01/14/2025 | | | $18,906 | | | | |

| Status | Type of Account | Type of Loan | Whose Account | Portfolio Indicator | Portfolio Status |
|---|---|---|---|---|---|
| Charge Off | Installment | Auto | Individual Account | | |

## ADDITIONAL INFORMATION:
*Charged Off Account*

*Auto*

## Account History with Status Codes

| 01/2025 1 | 12/2024 0 | 09/2024 0 | 08/2024 0 | 07/2024 0 | 06/2024 0 | 05/2024 0 | 04/2024 0 | 03/2024 0 | 02/2024 0 |
|---|---|---|---|---|---|---|---|---|---|
| 01/2024 0 | 12/2023 0 | 11/2023 0 | 10/2023 0 | 09/2023 0 | 08/2023 0 | 07/2023 0 | 06/2023 0 | 05/2023 0 | 04/2023 0 |
| 03/2023 0 | 02/2023 0 | 01/2023 0 | 12/2022 0 | 11/2022 0 | 10/2022 0 | 09/2022 0 | 08/2022 0 | 07/2022 0 | 06/2022 0 |
| 05/2022 0 | 04/2022 0 | 03/2022 0 | 02/2022 0 | 01/2022 0 | 12/2021 0 | 11/2021 0 | 10/2021 0 | 09/2021 0 | 08/2021 0 |
| 07/2021 0 | 06/2021 0 | 05/2021 0 | 04/2021 0 | 03/2021 0 | 02/2021 0 | 01/2021 0 | 12/2020 0 | 11/2020 0 | 10/2020 0 |
| 09/2020 0 | 08/2020 0 | | | | | | | | |

## Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/25 | $18,906 | | | 02/20/2025 | $64,656 | | $18,906 | Auto | | |

ADDITIONAL INFORMATION:
*Consumer Disputes - Reinvestigation in Process*

| 04/25 | $18,906 | | | 02/20/2025 | $64,656 | | $18,906 | Auto | | |
|---|---|---|---|---|---|---|---|---|---|---|

(End of Report)

# EXHIBIT D

Statement of Credit Denial — $960,000 Mortgage — October 16, 2025

# STATEMENT OF CREDIT DENIAL, TERMINATION, OR CHANGE

Applicant: **Jason Allen**

Address: **20668 N Bombastic St**
**Rathdrum, ID 83858**

Date: **October 16, 2025**
Loan Number: **2510176425**
Loan Amount: **$960,000.00**
Interest Rate: **8.750 %**
Term: **30 years**

Description of Account, Transaction, or Requested Credit:
**Request for Mortgage Loan**

Description of Action Taken:
**Credit Application Denied**

## Part I. Principal Reason(s) for Credit Denial, Termination, or Other Action Taken Concerning Credit

**A. Credit**
- ☐ No credit file
- ☐ Insufficient number of credit references provided
- ☐ Limited credit experience
- ☐ Unable to verify credit references
- ☐ Garnishment or Attachment
- ☐ Foreclosure or Repossession
- ☐ Collection Action or Judgment
- ☐ Excessive obligations
  - ☐ Insufficient income for total obligations
- ☐ Unacceptable payment record on previous mortgage
- ☐ Delinquent Past or Present Credit Obligations With Others
- ☐ Bankruptcy
- ☐ Unacceptable type of credit references provided
- ☐ Poor credit performance with us
- ☐ Number of recent inquiries on credit bureau report

**B. Employment Status**
- ☐ Unable to verify employment
- ☐ Length of employment
- ☐ Temporary or irregular employment

**C. Income**
- ☐ Income insufficient for amount of credit requested
- ☐ Unable to verify income
- ☐ Excessive Obligations in Relation to Income

**D. Residency**
- ☐ Temporary residence
- ☐ Length of residence
- ☐ Unable to verify residence

**E. Other**
- ☒ Credit application incomplete
- ☐ Inadequate collateral
  - ☐ Unacceptable property
  - ☐ Insufficient data – property
  - ☐ Unacceptable appraisal
  - ☐ Unacceptable leasehold estate
  - ☐ Value or type of collateral is not sufficient
- ☐ We do not grant credit to any applicant on the terms and conditions you have requested.
- ☐
- ☐

## Part II. Disclosure of Use of Information Obtained from an Outside Source

This section should be completed if the credit decision was based in whole or in part on information that has been obtained from an outside source.

☒ Our credit decision was based in whole or part on information obtained in a report from the consumer-reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer-reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Name: **Advantage Credit, Inc.**
Address: **144 RAILROAD AVE, SUITE 218, EDMONDS, WA 98020**
Telephone number (toll free): **800-670-7993**

☒ We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Credit Agency Name: **EXPERIAN**

Address: **PO BOX 2002, ALLEN, TX 75013**

Phone: **888-397-3742**

Your Credit Score: __**657**__

Date: __**October 3, 2025**__

Scores range from a low of __**300**__ to a high of __**850**__

Key factors that adversely affected your credit scores:

**SERIOUS DELINQUENCY**
**TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN**
**AMOUNT PAST DUE ON ACCOUNTS**
**LENGTH OF TIME ACCTS HAVE BEEN ESTABLISHED**

☒ Number of recent inquiries on consumer report

Credit Agency Name: **TRANSUNION**

Address: **PO BOX 2000, CHESTER, PA 19016**

Phone: **800-916-8800**

Your Credit Score: __**643**__

Date: __**October 3, 2025**__

Scores range from a low of __**309**__ to a high of __**839**__

Key factors that adversely affected your credit scores:

**SERIOUS DELINQUENCY**
**TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN**
**AMOUNT PAST DUE ON ACCOUNTS**
**LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED**

☒ Number of recent inquiries on consumer report

ICE Mortgage Technology, Inc.   Page 2 of 3   GSTATDENL22_S 1022
GSTATDENLS (POD)
10/16/2025 09:25 AM PST

Page 57 of 67

Credit Agency Name: **EQUIFAX**

Address: **PO BOX 740241, ATLANTA, GA 30374**

Phone: **800-685-1111**

Your Credit Score: **631**

Date: **October 3, 2025**

Scores range from a low of **334** to a high of **818**

Key factors that adversely affected your credit scores:

> **SERIOUS DELINQUENCY**
> **TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN**
> **AMOUNT OWED ON DELINQUENT ACCOUNTS**
> **LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED**

☒ Number of recent inquiries on consumer report

If you have any questions regarding your credit score(s), you should contact the consumer reporting agency(ies) at the above addresses or phone numbers.

☐ Our credit decision was based in whole or part on information obtained from an affiliate or from an outside source other than a consumer-reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for disclosure of the nature of this information.

If you have any questions regarding this notice, you should contact:
**OCMBC, Inc.**
**19000 MacArthur Boulevard Suite 200, Irvine, CA 92612**
**800-760-1833**

☐

## Notice:

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (providing that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

**Federal Trade Commission**
**Equal Credit Opportunity**
**Washington, DC 20580**

**Federal Trade Commission**
**Consumer Response Center, 600 Pennsylvania**
**Avenue, NW**
**Washington, DC 20580**
**877-438-4338**

This notification is given by: **OCMBC, Inc.**
**19000 MacArthur Boulevard Suite 200**
**Irvine, CA 92612**
**800-760-1833**

Notice mailed on: **October 16, 2025**

By: _____ *Haley Smith* _____
**Haley Smith**

# EXHIBIT F

Ford Motor Credit Company LLC
Retail Installment Sale Contract (Hemborg Ford)
July 2, 2020 — Amount Financed $64,656

CONTRACT — SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number _____ Contract Number _____ R.O.S. Number _____ Stock Number _____ 200016

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| | | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. fur according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2020 | FORD EXPLORER | | | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| ___ % | $ ___ (e) | $ ___ (e) | $ ___ (e) | $ ___ is $ ___ (e) |

(e) means an estimate

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | N/A |
| One Payment of | N/A | |
| One Payment of | N/A | |
| 71 | 838.00 | Monthly beginning 05/16/2020 |
| | N/A | |
| One final payment | 834.00 | |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   A. Cash Price of Motor Vehicle and Accessories $ ___ (A)
      1. Cash Price Vehicle $ ___
      2. Cash Price Accessories $ N/A
      3. Other (Nontaxable)
         Describe ___ $ N/A
         Describe ___ $ N/A
   B. Document Processing Charge (not a governmental fee) $ ___ (B)
   C. Emissions Testing Charge (not a governmental fee) $ ___ (C)
   D. (Optional) Theft Deterrent Device(s)
      1. (paid to) ___ $ ___ (D1)
      2. (paid to) ___ $ ___ (D2)
      3. (paid to) ___ $ ___ (D3)
   E. (Optional) Surface Protection Product(s)
      1. (paid to) ___ $ ___ (E1)
      2. (paid to) ___ $ ___ (E2)
   F. EV Charging Station (paid to) ___ $ N/A (F)
   G. Sales Tax (on taxable items in A through F) $ ___ (G)
   H. Electronic Vehicle Registration or Transfer Charge

### STATEMENT OF INSURANCE
NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ ___ Ded. Comp., Fire & Theft N/A Mos. $ N/A | | | |
| $ N/A Ded. Collision N/A Mos. $ N/A | | | |
| Bodily Injury $ N/A Limits N/A Mos. $ N/A | | | |
| Property Damage $ N/A Limits N/A Mos. $ N/A | | | |
| Medical N/A N/A Mos. $ N/A | | | |
| | | N/A Mos. $ N/A | |

Total Vehicle Insurance Premiums $ N/A

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X ___
Co-Buyer X ___
Seller X ___

OPTIONAL DEBT CANCELLATION AGREEMENT. A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term ___ N/A ___ Mos. N/A
Debt Cancellation Agreement
I want to buy a debt cancellation agreement.
**Buyer Signs X** ___

OPTIONAL SERVICE CONTRACT(S) You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

I1 Company N/A
Term N/A Mos. or N/A Miles
I2 Company ___
Term ___ Mos. or ___ Miles
I3 Company N/A
Term N/A Mos. or N/A Miles
I4 Company N/A
Term N/A Mos. or N/A Miles
I5 Company N/A
Term N/A Mos. or N/A Miles

J. Optional Service Contracts

1. cach: _____
2. cach: _____
3. cach: _____
4. cach: _____
5. cach: _____

K. Prior Credit or Lease Balance (if any)

Vehicle 1 _____

see downpayment and trade-in calculation

L. Optional Debt Cancellation Agreement

M. Optional Used Vehicle Contract Cancellation Option Agreement

N. Other cach: _____
   For: _____

O. Other cach: _____
   For: _____

**Total Cash Price** (A through O)

2. **Amounts Paid to Public Officials**
   A. Vehicle License Fees _____ A
   B. Registration/Transfer/Titling Fees _____ (B)
   C. California Tire Fees                           $_____ (C)
   D. Other _____            $_____
   **Total Official Fees (A through D)**

3. **Amount Paid to Insurance Companies**
   (Total premiums from Statement of Insurance)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee

5. **Subtotal (1 through 4)**

6. **Total Downpayment**
   A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicles)   $_____
      Vehicle 1 $_____ Vehicle 2 $_____
   B. Total Less Prior Credit or Lease Balance (e)                            $_____
      Vehicle 1 $_____ Vehicle 2 $_____
   C. Total Net Trade-In (A–B) (Indicate if negative number)                  $_____
      Vehicle 1 $_____ Vehicle 2 $_____
   D. Deferred Downpayment Payable to Seller                                  $_____ (D)
   E. Manufacturer's Rebate                                                   $_____ (E)
   F. Other _____                                                   $_____ (F)
   G. Cash. Cash Equivalent. Check. Credit Card. or Debit Card               $_____
   **Total Downpayment (C through G)**
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number in line 1.N above)

7. **Amount Financed (5 less 6)**                                            $_____

---

**Trade-In Payoff Agreement:** Seller relied on information from you and or the lienholder or lessor of the trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s) or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract. any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicles or any refund.

**Buyer Signature X** _____ **Co-Buyer Signature X** _____

---

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ **Name of autobroker receiving fee, if applicable:** _____

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

**Buyer Signs X** _____ **Co-Buyer Signs X** _____

---

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

**Buyer X** _____ **Co-Buyer X** _____

---

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED BY LAW... ... ANY PERSON WHO PURCHASES A VEHICLE IF YOU ARE A BUYER ... NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE ... ENT OF AN ACCIDENT. YOU SHOULD CONTACT YOUR ... WARNING: YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE ... ... REPLACEMENT COSTS FOR ... NOT HAVE FULL COVERAGE SUPP...

**7. Amount Financed (5 less 6)** ................ $ _____

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s) or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _____ Co-Buyer Signature X _____

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____ Co-Buyer Signs X _____

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____ Co-Buyer X _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN ... NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR ...
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE ... NOT HAVE FULL COVERAGE. SUPPLEMENTAL COVERAGE ... DEALER. HOWEVER, UNLESS OTHERWISE ... THE UNPAID BALANCE ...
FOR ADVICE ON FULL COVERAGE ...
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE ... TERMS AND CONDITIONS.

... PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR ... OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
... INSURANCE IS PURCHASED. IF YOU DO ... YOUR INSURANCE AGENT OR THROUGH THE SELLING ... DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF ...

S/S X _____

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator of the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____ Co-Buyer Signature X _____

## The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a cooling-off or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT WE GAVE IT TO YOU AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date _____ Co-Buyer Signature X _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____ Address _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay, any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor. And even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor also acknowledges receipt of a completed copy of this contract and guaranty at the time of signing. Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default and notices of the amount owing at any time and of all demands upon the Buyer.

Guarantor X _____ Date _____ Guarantor X _____ Date _____

Address _____ Address _____

Seller Signs _____ Date _____ By X _____ Date _____

**LAW** FORM NO. 553-CA-ARB (REV. 7/18)
©2016 The Reynolds and Reynolds Company TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-5055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM.

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

> **GAP LIABILITY NOTICE**
> In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

## 5. Used Car Buyers Guide.
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree that you will within a reasonable time notify us of any change in your name, address, or employment.

## 7. APPLICABLE LAW

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

## 8. WARRANTIES OF BUYER

You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit

choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. This charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front or, in a contract ... at our option, the highest rate the law permits. If the vehicle is not damaged, you agree that we ... use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you are late, ... take the steps described below.

b. ... have to pay all you owe at once. If you break ... terms ... that you pay all ... subject to any right the ... to reinstate this contract.

Default means:
- You do not pay ... on time
- You give false information ...
- ... on a credit application
- You start ... started against you ...
- The vehicle is ...
- You break any agreement ...

Amount ...
Finance Charge ...
Balance ...

c. You ...

... charge not to exceed ... you give us is dishonored.

d. We may take the vehicle from you. If you default, we may ... do so ... has an ... use the vehicle ... we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle ... we ... ask ... these items back ... the law ...

e. ... You may redeem the vehicle ... you may have the right ... the right ... payments and maintenance charges ... ... by law to ... what ...

---

information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### CREDIT DISABILITY INSURANCE NOTICE
### CLAIM PROCEDURE

... comes first. We can, however, try to collect amounts ... you have any money due and owing us ... in default when your disability claim is made ... holder is foreclosing.

If the insurance company denies a ... amounts ... we may ... accept ... insurance company denies ... or accepts ... disability ...

According to ...

### Seller's ...

... delivery ...
is agreed by Seller and you ... ... time for Seller to verify your credit and assign the ...

choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will *tell you which type and the charge you must pay.* The charge will be the premium for the insurance and a finance charge _____ Annual Percentage Rate _____

e. What happens to _____ insurance, _____ maintenance, _____

3. **IF YOU PAY LATE OR BREAK YOUR OTHER _____**

a. You may owe late charges _____

b. You may have to pay _____ break _____ all you owe on this contract _____ the _____ Default means _____
   - You do not pay _____
   - You give false _____ on a credit application.
   - You start a proceeding _____ against you or your property.
   - The vehicle is lost _____
   - You break any agreement _____
   The amount you _____ the Amount Financed plus the same _____ the Finance Charge _____ due because you defaulted.

c. **You may have to pay** _____ pay our reasonable costs to collect _____ including attorney fees, court costs _____ fees paid for other reasonable collection _____ pay a charge not to exceed $15 _____ is dishonored.

d. **We may take the vehicle from** _____ may take (repossess) the vehicle _____ so peacefully and the law allows _____ an electronic tracking device, you _____ use the device to find the vehicle. If _____ any accessories, equipment, and _____ stay with the vehicle. If any personal _____ we may store them for you at your _____ ask for these items back, we may _____ law allows.

e. **How you can get the vehicle back** _____ if we repossess the vehicle, you may _____ (redeem). You may redeem the vehicle by _____ you may have the right to reinstate this _____ the vehicle by paying past due payments _____ charges, providing proof of insurance, and _____ to cure the default. We will provide you _____ by law to tell you when and how much _____ what action you must take to redeem the _____

information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your *residence address to us.*

**1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT ... AS A REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US ... CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

**3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE ... IN A LAWSUIT AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE ...**

Any claim or dispute, whether in contract, tort, statute or otherwise ...

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff ... of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is ... for any reason, the remainder shall remain enforceable. If a waiver of class action rights is ... reason in a case in which class action allegations have been made the ...

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES ... THE DEBTOR COULD ASSERT AGAINST THE ... WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods ... Buyer will not assert against any subsequent ... have against the Seller, or against the manufacturer ... under this contract.

| Seller assigns its interest in this contract to | |
|---|---|
| [ ] Assigned with recourse | |
| Seller | |

Form No. 553-CA-ARB 7/16

OR BY JURY TRIAL.

IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise ... Arbitration Provision. ... the arbitrability of the claim or dispute ... between you and us ... relates to your credit application, purchase or condition of this vehicle ... including any such relationship with third parties who do not sign this contract ... binding arbitration and not by a court action. If federal law provides that a claim or dispute ... Arbitration Provision shall not apply to ... dispute. Any claim or dispute ... basis and not as a class action, ... you may have to ... Arbitration Association, 1000 ... arbitration subject to our approval. You may ... the rules of an arbitration ... its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to ... substantive law and the applicable statute of limitations. The arbitration hearing ... reside unless the Seller-Creditor is a ... contract was executed. We ... to a maximum of $5000, unless the law ... may be reimbursed in whole or in part by ... applicable law. Each party shall be responsible for its own attorney, ... applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision ... Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator ... parties, subject to any ... right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | Assignee under the terms of Seller's agreement(s) with Assignee. |
|---|---|
| ☐ Assigned with recourse | ☐ Assigned without recourse |
| Seller | |

Form No. 553-CA-ARB 7/16